# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 10, 2005 Session

## MAE ELLEN WILLIAMS, ET AL. v. BAPTIST MEMORIAL HOSPITAL, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. CT-007191-01     James F. Russell, Judge**

---

**No. W2003-02872-SC-R11-CV - Filed April 19, 2006**

---

We granted this appeal to determine whether the trial court erred in denying the plaintiffs' motion for an enlargement of time under Rule 6.02 of the Tennessee Rules of Civil Procedure and in granting summary judgment to the defendants.  A majority of the Court of Appeals affirmed the judgment.  After reviewing the record and applicable authority, we conclude (1) that the trial court did not abuse its discretion in denying the plaintiffs' motion for an enlargement of time because the plaintiffs failed to show excusable neglect under Rule 6.02 and (2) that the trial court properly granted summary judgment to the defendants.  As a result, we affirm the Court of Appeals' judgment.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

Mimi Phillips and R. H. "Chip" Chockley, Memphis, Tennessee, for the Appellants, Mae Ellen Williams, Percy Williams, and Mytina Singleton, Conservator for Mae Ellen Williams.

Harold W. McLeary, Jr., Kenneth O. Cooper, W. Bradley Gilmer, and M. Beth Rainwater, Memphis, Tennessee, for the Appellees, Becky Wright, M.D., and Metropolitan Anesthesia Alliance.

**OPINION**

**BACKGROUND**

On December 5, 2000, Mae Ellen Williams ("Williams"), age 57, went to the emergency room at Baptist Memorial Hospital ("BMH") in Memphis, Tennessee. She reported a history of epigastric pain that had started the previous night. She had pain in her abdomen and right arm, and she was unable to lie down.

Dr. Janice L. Garrison, a cardiologist employed by Cardiology Specialists of Memphis ("CSM"), diagnosed Williams with pancreatitis and acute cholelithiasis and ordered a gastrointestinal consult. Her diagnosis was based in part on the results of an endoscopic retrograde cannulation of the bile and pancreatic ducts performed by Dr. Rolando Leal. Dr. Garrison referred Williams to Dr. Janice Wood, a surgeon employed by Health First Medical Group ("HFMG").

On December 7, 2000, Dr. Wood performed gall bladder removal surgery on Williams. Dr. Becky C. Wright, employed by the Metropolitan Anesthesiologist Alliance, ("MAA"), administered anesthesia to Williams. After four unsuccessful efforts to establish an airway with an endotracheal tube, including an attempt that knocked out one of Williams' teeth, Dr. Wright established an airway on the fifth attempt. Following surgery and removal of the endotracheal tube, Williams was not able to breathe on her own. While Dr. Wright tried to re-establish an airway, Williams' vital signs became undetectable. After efforts to resuscitate Williams ceased, she began to breathe on her own and a re-intubation was performed. Williams suffered irreversible encephalopathy, however, and she was placed on life support. She remained comatose or semi-comatose until her death more than a year after her surgery on April 24, 2002.

Prior to Williams' death, the plaintiffs[1] filed this medical malpractice action on November 30, 2001, in the Circuit Court for Shelby County. An amended complaint was filed on December 17, 2001, and a proposed amended complaint was filed on October 16, 2003.[2] Dr. Wright and MAA filed an answer on February 19, 2003.

On January 31, 2003, the trial court, with the agreement of counsel, entered a "Consent Scheduling Order" that required the plaintiffs to "identify any expert who will be called to testify at the trial" before April 15, 2003, and to "produce any expert to be used at the trial . . . to defense counsel for a discovery deposition . . . on or before June 1, 2003." On March 24, 2003, the trial court entered a new scheduling order, entitled "Order on Scheduling Conference," that stated as follows:

---

[1] The plaintiffs included Williams, her husband, her daughter, and her conservator.

[2] The second amended complaint named BMH, Dr. Garrison, CSM, Dr. Wood, HFMG, Dr. Wright, and MAA as defendants. On October 30, 2003, the trial court granted summary judgment to Dr. Garrison and CSM. On October 31, 2003, the trial court granted summary judgment to Dr. Wood and HFMG. On November 4, 2003, the trial court granted summary judgment to BMH. Because the plaintiffs did not appeal these summary judgments, the only defendants involved in this appeal are Dr. Wright and MAA.

> The Court . . . denied the Defendant's [sic] Motion to Modify
> Scheduling Order and set the entire Scheduling Order aside. <u>In
> addition, the Court established a deadline for Plaintiffs [sic]
> identification of experts of July 1, 2003</u>. All pending Motions for
> Summary Judgment will be set for hearing on . . . August 29, 2003.
> All materials related to the Summary Judgment Motions shall be
> submitted to the Court by August 22, 2003.

(Emphasis added). In effect, the order gave the plaintiffs additional time in which to comply with their expert identification and discovery obligations while also attempting to move the proceedings along more expeditiously.

On July 25, 2003, Dr. Wright and MAA filed a motion for summary judgment based on the plaintiffs' lack of expert proof. The motion included Dr. Wright's affidavit, which asserted that she complied with the professional standard of care and that Williams "did not sustain any injuries as a result of anything [Wright] did or did not do."

On August 22, 2003, the plaintiffs filed a response to the motion for summary judgment, which included the affidavit of Dr. Ronald J. Gordon. Dr. Gordon, a board-certified anesthesiologist who practiced in Winchester, Tennessee, stated that he was "familiar with the recognized standard of acceptable professional medical care in the metropolitan areas of Tennessee and specifically in Memphis, Tennessee and similar communities, as it existed in December of 2000." The affidavit did not state the basis for Dr. Gordon's familiarity with the standard of care in Memphis, nor did it state that Winchester was a similar community to Memphis.

Dr. Gordon asserted that Dr. Wright failed to satisfy the standard of care by failing to consider Williams' history of being difficult to intubate and by making repeated efforts at intubation despite the resulting trauma and swelling. Dr. Gordon also stated that Dr. Wright failed to satisfy the standard of care by conducting an extubation while Williams was unstable and by conducting a re-intubation and re-extubation without treating Williams' negative pressure pulmonary edema.

A summary judgment hearing was not held on August 29, 2003, as required in the scheduling order, because the pleadings had not been corrected. The trial court advised the plaintiffs that they had failed to file a proper substitution of parties following Williams' death and had failed to amend their pleadings to allege a wrongful death cause of action. On September 12, 2003, the defendants filed a motion to dismiss because the plaintiffs still had not filed a motion for substitution of parties. On October 15, 2003, the plaintiffs finally filed a motion for substitution of parties, as well as a proposed amended complaint, which changed the theory of liability.

The trial court held a motions hearing on October 17, 2003. On that same morning, the plaintiffs filed a motion to enlarge the time in which to identify expert witnesses who would testify at trial. The motion contended that the plaintiffs' failure to identify an expert prior to July 1, 2003, as required by the scheduling order, was the result of excusable neglect. The motion asserted that

-3-

during a deposition taken by the defendants in March of 2003, Williams' sister testified that Williams had been too difficult to intubate to proceed with an attempted gynecological procedure several years earlier. The motion stated that the plaintiffs "made repeated and dogged efforts" to find the records of the earlier procedure so that the plaintiffs' prospective expert witnesses could review them. The motion indicated that the plaintiffs acquired the records on or about August 6, 2003, despite having been told by BMH that the records did not exist. The plaintiffs then gave the records to Dr. Gordon and obtained his affidavit. In short, the plaintiffs alleged that their conduct was "excusable neglect, and not the result of any dilatory conduct or carelessness . . . ."

Following the hearing, the trial court denied the plaintiffs' motion for an enlargement of time after concluding that it had been "fairly generous to the Plaintiff[s] . . . with setting deadlines and scheduling Orders and extending those deadlines" and that the plaintiffs' delays had impaired the defendants' ability to prepare for trial. In addition, the trial court denied the plaintiffs' motion for substitution of parties and found that Dr. Gordon's affidavit was insufficient under Tennessee Code Annotated section 26-21-115(a).[3] The trial court granted summary judgment to Dr. Wright and MAA.

On appeal, a majority of the Court of Appeals concluded that the trial court did not abuse its discretion in denying the plaintiffs' motion to enlarge the time for identifying expert witnesses who would testify. The majority reasoned:

> No effort was made by the Plaintiffs, prior to July 1, 2003, to extend the time for identification of experts, and Plaintiffs concede that it would have been wise to do so when they encountered difficulty in obtaining the records. The trial court's action must be tested by an abuse of discretion standard, and it is important to note that the trial court expressly advised the Plaintiffs that they should be careful on the agreed-on time because they would be held to it.

A dissenting member of the appellate court concluded that the trial court's denial of the motion to enlarge the time was "unduly harsh" because (a) the plaintiffs had complied with the deadline for submitting material for summary judgment proceedings and (b) there had been no prejudice to the defendants.

We granted the appeal to review these issues.

---

[3] As discussed in depth later in this opinion, Tennessee Code Annotated section 26-21-115 contains the requirements that must be shown by the claimant with expert testimony in a medical malpractice action.

-4-

# ANALYSIS

## Excusable Neglect

The plaintiffs argue that the trial court abused its discretion in denying their motion to enlarge the time for identifying expert witnesses who would testify at trial. The defendants argue that the trial court did not abuse its discretion and that the trial court, therefore, properly granted summary judgment.

We begin our review with Rule 6.02 of the Tennessee Rules of Civil Procedure, which states in relevant part:

> Enlargement – When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, . . . (2) <u>upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was a result of excusable neglect</u>, but it may not extend the time for taking any action under Rules 50.02, 59.01, 59.03 or 59.04 . . . .

(Emphasis added). Where an enlargement of time is requested after the original time has elapsed, Rule 6.02(2) requires the party requesting the enlargement to show that its failure was due to excusable neglect and that the opposing party has not been prejudiced. <u>See</u> <u>Douglas v. Estate of Robertson</u>, 876 S.W.2d 95, 97-98 (Tenn. 1994).

As the Court of Appeals has noted, the United States Supreme Court has set out the most authoritative explanation of excusable neglect:

> [A] party's failure to meet a deadline may have causes ranging from forces beyond its control to forces within its control. . . . The former will almost always substantiate a claim of excusable neglect; the latter will not. However, neglect extends to more than just acts beyond a party's control and intentional acts. It encompasses "simple, faultless omissions to act and, more commonly, omissions caused by carelessness."

<u>State ex rel Sizemore v. United Physicians Ins. Risk Retention Group</u>, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001) (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388 (1993)); <u>see also</u> <u>Kenyon v. Handal</u>, 122 S.W.3d 743, 756 (Tenn. Ct. App. 2003). The Supreme Court's comprehensive framework, which we adopt, requires a court to consider (1) the risk of prejudice to parties opposing the late filing, (2) the delay and its potential impact on proceedings, (3) the reasons why the filings were late and whether the reasons were within the filer's reasonable

control, and (4) the good or bad faith of the filer. Pioneer Inv. Servs. Co., 507 U.S. at 395; see also Sizemore, 56 S.W.3d at 567.

These considerations, and the terms of Rule 6.02, dictate that whether to grant an enlargement of time is left to the discretion of the trial court. As we have often noted, a trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quotation and citation omitted). The abuse of discretion standard does not permit an appellate court to substitute its judgment for that of the trial court. See Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998).

In first applying the risk of prejudice factor, we note that the trial court made the following findings:

> The doctors have been under the cloud of this lawsuit for well over two years. Among other things, they have registered in a medical malpractice databank, which is not a good thing for them. Their insurance carriers have established a claim reserve . . . .
>
> Moreover, and more importantly, with the passage of time, important witnesses disappear. Memories fade. And now that the theories of the Plaintiff[s] have changed and changed and changed again, the Defendants still do not know how to prepare a defense . . . .

The trial court emphasized that the plaintiffs had failed to file supplemental responses to interrogatories seeking the names of experts and their opinions, which had been served on them by the defendants on several occasions since the filing of the lawsuit:

> As of the hearing date on August 29, 2003, the Plaintiff[s] had supplied no appropriate supplemental responses to the expert interrogatories as required by the Tennessee Rules of Civil Procedure. And then, of course, more time passed from August 29, 2003 until yesterday, when the Plaintiff[s] finally did tender supplemental responses to the expert interrogatories. And even now, no Defendant has been given a real opportunity to present a [reply] to this latest response of the Plaintiff[s].

In addition, the trial court noted that the plaintiffs failed to file a motion for substitution of parties until October 15, 2003, even though such a motion was to be filed within ninety days after Williams' death in April of 2002, see Tenn. R. Civ. P. 25.01, and also failed to amend the pleadings to allege wrongful death, a failure the trial court had noted on August 29, 2003. Moreover, the plaintiffs conceded that their proposed amended complaint, which was filed just prior to the hearing on

October 17, 2003, included extensive "substantive changes." In short, the trial court found that the plaintiffs' delays were prejudicial because they impaired the defendants' ability to prepare for trial.

Next, in considering the effect of the delay, we note that no trial date had been set. The trial court emphasized, however, that it previously had entered a revised scheduling order at the plaintiffs' request and had warned the plaintiffs at that time to adhere to the schedule. Moreover, while the plaintiffs complied with the summary judgment deadline of August 22, 2003, counsel conceded that they had no reason for failing to file a motion requesting an enlargement of time under Rule 6.02 until October 17, 2003, i.e., several months after the expiration of the July 1, 2003 deadline for identifying their experts. The plaintiffs also failed to seek substitution of the parties or file a timely amended complaint.

Last, in considering the reasons for the plaintiff's delays, the plaintiffs argued that their failure to meet the July 1, 2003 deadline was due to their inability to obtain Williams' prior medical records for their experts to review. However, although the trial court made no factual findings as to the good or bad faith of the plaintiffs, there is no dispute that the plaintiffs had learned of the existence of Williams' prior medical records in March of 2003, i.e., nearly four months before the July 1, 2003 deadline. Moreover, given that the complaint was filed in November of 2001, there is no indication as to why the plaintiffs were unable to learn of Williams' prior medical history from a member of Williams' family before the information emerged in a deposition taken by the defendants in March of 2003.

We conclude that the trial court did not abuse its discretion in denying the plaintiffs' motion for an enlargement of time under Rule 6.02 after finding that there was no excusable neglect. The trial court held an extensive hearing and considered the factors identified above. The trial court considered the reasons for the plaintiffs' delay, the length of the delay, the prejudice caused to the defendants, and the potential impact on the proceedings. Although the inquiry of prejudice and the effect of the delay generally should focus on the plaintiffs' failure to identify expert witnesses by the deadline set by the trial court, this failure cannot be isolated from the plaintiffs' failure to comply with other deadlines and magnifies both the prejudice to the defense and the effect of the delay.

The trial court cited the risk of losing "important witnesses" or testimony due to the history of time; moreover, it specifically found that the defendants' ability to prepare for trial had been impaired due to the plaintiffs' delays, failures to file responses to the defendants' interrogatories, and changing theories. In addition, the trial court properly emphasized that the plaintiffs had failed to request the enlargement of time prior to July 1, 2003, even though they conceded that they "had experts lined up in April, even before April." The trial court noted that the plaintiffs had been told that the deadline, which had already been extended once, would not be extended again.

Accordingly, the trial court did not abuse its discretion in denying the plaintiffs' motion for enlargement of time under Rule 6.02 after finding there was no excusable neglect. Since no plaintiffs' expert affidavit contested the assertions and affidavit in the defendants' motion for

summary judgment, it follows that the trial court properly granted summary judgment to the defendants.

## Sufficiency of Expert Affidavit

Although our decision rests on the preceding issue, we wish to clarify an additional issue that was considered and decided by the Court of Appeals. The trial court found that the affidavit tendered by Dr. Robert Gordon failed to satisfy the requirements of Tennessee Code Annotated section 29-26-115(a). The Court of Appeals, however, concluded that the affidavit was sufficient.

As we consider whether the affidavit complied with the statute, we note that the claimant in a medical malpractice case must establish several requirements by expert medical testimony:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a)(1)–(3) (Supp. 2005).

With regard to section 115(a)(1), a medical expert relied upon by the plaintiff "must have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of professional care in a community *that is shown to be similar* to the defendant's community." Robinson v. LeCorps, 83 S.W.3d 718, 724 (Tenn. 2002). Expert witnesses may not simply assert their familiarity with the standard of professional care in the defendant's community without indicating the basis for their familiarity. Id.; see also Stovall v. Clarke, 113 S.W.3d 715, 723 (Tenn. 2003); Kenyon, 122 S.W.3d at 760, 762.

A trial court's consideration of issues under section 115(a)(1) is affected by the timing in which the defendant objects to the plaintiff's expert witness. For instance, in determining whether the standard has been met in summary judgment proceedings, the trial court must examine the

expert's affidavit and any deposition testimony that has been offered by the plaintiff.[4] In Robinson, we held that the plaintiff's expert witness failed to establish the professional standard of care applicable in Nashville, Tennessee, where the expert's deposition stated only that the standard of care in Nashville was "the same as a national standard" and that "[t]here is no differentiation recognized in our profession of one locality as opposed to the other . . . ." 83 S.W.3d at 721. We emphasized that the expert did not "relate the basis for his knowledge of the standard of care . . . or indicate why the Nashville medical community was similar to, and thus had the same standard of professional care as, the community with which [he] was familiar." Id. at 725; compare Stovall, 113 S.W.3d at 723 (section 115(a)(1) satisfied where affidavit and deposition revealed that the expert had reviewed twenty medical charts in Tennessee, had testified in three malpractice cases in Tennessee, and had reviewed information about the medical community in which the defendant practiced).

Likewise the Court of Appeals has upheld a trial court's finding that an affidavit was insufficient where the expert stated only that "the standard of care . . . is identical in the State of Georgia as in the State of Tennessee." Kenyon, 122 S.W.3d at 760. In affirming the trial court's grant of summary judgment to the defendants, the court stated that the "expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community." Id. at 762. The court explained:

> The fatal shortcoming in . . . [the] affidavit is that it does not contain sufficient facts to demonstrate that [the expert's] opinion regarding the applicable standard of professional practice is based either on his familiarity with the applicable standard of professional practice [in the community in which the defendant practiced] or on his knowledge of the applicable standard of professional practice in a community similar to [that in which the defendant practiced]. Nothing in [the] affidavit indicates that [the expert] has any personal knowledge of the practice [in the community in which the defendant practiced].

Id. at 762.

---

[4] In determining whether the standard has been met in response to a motion made during trial, the court may also consider the expert's trial testimony. Hunter v. Ura, 163 S.W.3d 686, 707 (Tenn. 2005). In Hunter, the defendant moved to exclude the testimony of the plaintiff's expert and to grant a directed verdict during trial. We upheld the trial court's finding that the plaintiff's expert, a board-certified anesthesiologist who practiced in Lexington, Kentucky, was competent to testify about the standard of care in Nashville, Tennessee. The trial court considered the expert's affidavit and his testimony regarding his "familiarity with the standard of care in Nashville, the extent of his involvement and contact with anesthesiologists who practiced in Nashville, and his familiarity with hospitals in Nashville." As a result, we concluded that the expert "did not base his testimony on a national standard of care for anesthesiologists and . . . did not simply equate his medical community in Lexington with a national standard of care or with the defendants' medical community in Nashville, Tennessee." Id. at 708.

Here, the plaintiffs relied on the affidavit of Dr. Robert Gordon.  Dr. Gordon, a board-certified anesthesiologist who practiced in Winchester, Tennessee, stated that he was "familiar with the recognized standard of acceptable professional medical care in the metropolitan areas of Tennessee and specifically in Memphis, Tennessee and similar communities . . . ."  The affidavit contains no information regarding the basis for Dr. Gordon's familiarity with the standard of care in Memphis, Tennessee, nor does it contain a basis for finding that the standard of care in Memphis is similar to that in the community in which Dr. Gordon practices.  In short, Dr. Gordon's affidavit simply asserts that he is familiar with the applicable standard of care.  As we have explained in prior cases, a bare assertion of familiarity is insufficient under Tennessee Code Annotated section 29-26-115(a)(1).  Accordingly, we conclude that the affidavit was legally insufficient.

## CONCLUSION

After reviewing the record and applicable authority, we conclude that the trial court did not abuse its discretion in denying the plaintiffs' motion for an enlargement of time under Rule 6.02 of the Tennessee Rules of Civil Procedure and that  the trial court properly granted summary judgment to the defendants.  We therefore affirm the Court of Appeals' judgment.  Costs of the appeal are taxed to the plaintiffs-appellants and their sureties, for which execution shall issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE