IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 3, 2017

## RANDALL EUGENE DENTON v. DEBORAH MEADOWS DENTON

**Appeal from the Chancery Court for Henderson County**
**No. 18292    James F. Butler, Chancellor**

_____

## No. W2017-00472-COA-R3-CV

_____

Appellant, a sixty-nine year old retiree, was found guilty of civil contempt for failure to comply with a marital dissolution agreement. We reverse the trial court's order incarcerating Appellant "until payment of the debt" and instead order his immediate release from incarceration based upon his inability to pay the debt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the appellant, Randall Eugene Denton.

## MEMORANDUM OPINION[1]

### Background

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This appeal stems from post-divorce contempt proceedings in which both parties were represented by counsel. The parties, Petitioner Deborah Meadows Denton and Respondent/Appellant Randall Eugene Denton ("Appellant") were divorced by final decree in 2005. Incorporated into the decree was a marital dissolution agreement ("MDA") signed by the parties providing for the disposition of their marital property, including two pieces of real property, a sixty acre tract ("60-acre tract"), and a twenty-eight acre tract ("28-acre tract"). Appellant was to receive the 60-acre tract, while Ms. Denton was to receive the 28-acre tract, where her home was located. The properties were encumbered by two mortgages. First, Appellant was required to assume what the parties termed "the first mortgage," which apparently was secured by both tracts of lands. The debt on the first mortgage was approximately $90,000.00. Ms. Denton in turn was to assume "the second mortgage" of approximately $25,000.00. The MDA does not specifically note whether the property securing the second mortgage includes only the 28-acre tract or both tracts, as with the first mortgage. With regard to these debts, the MDA provided that the party assuming the debt would hold the other party harmless, "including protection from foreclosure."

On January 31, 2014, Ms. Denton filed a petition for contempt against Appellant relative to his obligations under the MDA. The petition alleged that the parties had "themselves modified the payment of the debt" so that Appellant was transferred ownership of two mobile homes, whose rental income was to be utilized by Appellant to pay both the first and second mortgages. Despite this agreement, Ms. Denton alleged that Appellant failed to make the required mortgage payments. Appellant answered the petition, generally denying the material allegations contained therein.

The trial court thereafter entered an order on September 14, 2014, finding Appellant in contempt, reserving the issue of sanctions and attorney's fees, and ordering Appellant to "take necessary steps to prevent [Ms.] Denton's home and real property from being foreclosed." A hearing to determine any further action necessary was scheduled for October 9, 2014.

The record contains no further filings with regard to Ms. Denton's first contempt petition. Rather, on April 12, 2016, Ms. Denton filed a second petition for contempt against Appellant. Therein, Ms. Denton alleged that during the October 9, 2014 hearing, Appellant informed the trial court that he had filed Chapter 13 bankruptcy to avoid foreclosure of the home and property. Regardless, on January 27, 2016, Ms. Denton alleged that she received notification that foreclosure proceedings had been initiated against a portion of the 28-acre lot. According to the notice, the debt on the property had been accelerated and the amount of the debt totaled $135,594.51. Ms. Denton's petition asked that Appellant be held in contempt, but did not specify that she was seeking incarceration as a remedy.

Appellant filed an answer to the contempt petition on May 23, 2016. Therein, he alleged that Chapter 13 bankruptcy proceedings were ongoing and asked that the contempt proceedings be stayed pursuant to the automatic bankruptcy stay.[2]

Over the years, the parties held several hearings before the trial court on this issue. After a final judgment was entered in this case, a Statement of the Evidence was filed, which statement appears to include matters beginning in September 2014 and concluding in November 2016.[3] According to the Statement of the Evidence, at some point, the parties stipulated that pursuant to the MDA, Appellant was awarded the 60-acre tract and the first mortgage, while Ms. Denton received the 28-acre tract, where her home was located, as well as the second mortgage. It was undisputed, however, that after the entry of the MDA, Appellant sold the 60-acre tract and entered into an agreement with Ms. Denton to refinance the two mortgages into a single loan solely in his name.[4] The parties both testified that the refinance in his name was necessary as Ms. Denton's credit prevented her from refinancing her debt alone. According to the parties, Appellant made the payment on the new loan for many years, but later stopped. Appellant contended that his failure to pay was the result of his inability to pay. Appellant testified that his income had substantially decreased since the divorce, as he was required to retire due to health reasons.[5] As such, Appellant testified that he and his current wife have expenses of approximately $3,263.00 per month, while only receiving income in the amount of $3,200.00 per month. Ms. Denton generally testified that Appellant had "paid a great portion of her debt out of kindness and that he was good to her." Additionally, she

---

[2] According to the Statement of the Evidence, it appears that the bankruptcy stay issue was eventually resolved.

[3] The specific dates that the evidence contained in the Statement of Evidence was presented are unclear from the record. The Statement of Evidence begins by stating that "On September 11, 2014 [Ms.] Denton . . . presented her first Motion for Contempt . . . ." Additionally, the parties often refer to evidentiary hearings that took place in 2014. The Statement of the Evidence concludes, however, with statements regarding proceedings that took place as late as November 2016. Additionally, the trial court states in its written order and oral ruling attached to the final order that an evidentiary hearing took place variously on November 3, 2016 and November 17, 2016. The record on appeal contains only a transcript from a November 11, 2016 hearing, in which no testimony was actually presented. Because no objection was filed to Appellant's Statement of the Evidence and the trial court implicitly accepted the statement, we assume for purposes of this appeal that it constitutes "a fair accurate and complete account of what transpired with respect to those issues that are the basis of the appeal." Tenn. R. App. 24 (c) (outlining the appellant's duty to prepare a Statement of the Evidence), (f) (requiring that the trial judge approve a Statement of the Evidence, and stating that in the absence of action by the trial court the "statement of the evidence shall be deemed to be approved and shall be so considered by the appellate court[.]"). Accordingly, we will consider only the evidence contained in the Statement of Evidence and in the transcripts from the later proceedings.

[4] No documents were included in the record on appeal to reflect the exact terms of this agreement.

[5] Appellant is sixty-nine years old and suffers from a serious heart condition, as well as an aortic aneurysm.

admitted that Appellant's assistance allowed her to maintain her home longer than she otherwise would have.

Three additional hearings were held by the trial court on this issue, all of which were recorded by transcript. First, on November 11, 2011, the parties appeared, but no testimony was presented. Instead, Ms. Denton's counsel asserted that Appellant failed to indicate that the loan at issue was a secured debt in his bankruptcy petition, which resulted in his payment on the debt increasing from $800.00 per month to approximately $1,700.00 per month. At the conclusion of November 11, 2016 hearing, the trial court reaffirmed that Appellant was in contempt, but allowed him ten days to "come up with a plan." The trial court indicated that in order to meet his obligations, Appellant "may have to lower his standard of living a little bit."

The parties reconvened on December 1, 2016. Again, no evidence was taken. The trial court noted that Ms. Denton was in danger of losing her property, but stated: "And as I understand it, the amount necessary to solve the money problem, [Appellant] says that's more than he can afford to pay." The trial court also noted that there had been some testimony that Appellant had taken some vacations with his current wife. Counsel for Appellant indicated that the mortgage holder is "wanting $1,700[.00] to stop the foreclosure and that's just simply an impossibility." Rather, counsel indicated that Appellant could pay up to $300.00 per month if Ms. Denton could find other accommodations. During this hearing, counsel for both parties indicated that Appellant's income was $2,700.00 per month.

A third and final recorded hearing occurred on January 12, 2017. The hearing largely concerned statements of counsel as to whether the debt owed by Appellant was secured by any of the 28-acre tract awarded to Ms. Denton in the divorce, as some confusion had arisen regarding this issue in the last hearing. Appellant testified as to the purpose of the debt at issue and indicated that its purpose was to remodel Ms. Denton's home and purchase horses. At the conclusion of the trial, the trial court orally ruled that Appellant had willfully failed to meet his obligations under the MDA and ordered that he be remanded to jail "until he purges himself of the contempt or until further order of the [c]ourt." Counsel for Appellant orally requested that the sentence be stayed pending appeal, which motion was denied by the trial court. The trial court thereafter entered a written ruling memorializing its oral ruling on March 2, 2016. Therein, the trial court specifically rejected Appellant's contention that he did not have the ability to pay the obligations under the MDA. The trial court therefore ordered that Appellant be "sentenced to custody and committed to jail until payment of the debt or further order of the Court." Appellant filed a timely notice of appeal and remains incarcerated to this day.

**Issues Presented**

Appellant raises a single issue, which is taken from his brief: "Whether the trial court erred in finding that Appellant willfully failed to protect [Ms. Denton] from foreclosure and in holding him in civil contempt." Ms. Denton has not participated in this appeal.

## Discussion

Tennessee courts have the power to punish litigants for failure to comply with their orders. *See generally* **Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.**, 249 S.W.3d 346, 354 (Tenn. 2008) (citing Tenn. Code Ann. § 16-1-103). Relevant to this appeal, Tennessee Code Annotated section 29-9-102(3) empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." "This provision enables the courts to maintain the integrity of their orders." *Konvalinka*, 249 S.W.3d at 354 (citing **Wilson v. Wilson**, 984 S.W.2d 898, 904 (Tenn. 1998)).

The Tennessee Supreme Court explained the four essential elements of a successful civil contempt claim as follows:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354–55 (footnotes omitted). After determining that a person before the court has willfully violated a lawful and sufficiently clear order, the court may, in its discretion, hold the person in civil contempt. *Id.* at 358 (citing **Robinson v. Air Draulics Eng'g Co.**, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964)). The court's decision is entitled to great weight; therefore, we review the trial court's decision under the abuse of discretion standard. *Konvalinka*, 249 S.W.3d at 358 (citing **Hawk v. Hawk**, 855 S.W.2d 573, 583 (Tenn. 1993); **Hooks v. Hooks**, 8 Tenn. Civ. App. (Higgins) 507, 508 (Tenn. Ct. App. 1918)). Consequently, we are not permitted to substitute our own judgment for that of the court whose decision is being reviewed. *Konvalinka*, 249 S.W.3d at 358 (citing **Williams v. Baptist Mem'l Hosp.**, 193 S.W.3d 545, 551 (Tenn. 2006); **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001)).

On appeal, Appellant generally argues that the trial court erred in finding that he willfully failed to meet his obligations under the MDA because he did not have the ability to pay the financial obligations contained therein. In **Ahern v. Ahern**, the Tennessee Supreme Court held that in order for a court to rule that conduct "was contemptuous," the trial court "first must determine that [the litigant] had the ability to pay . . . and then

determine that the failure to pay was wil[l]ful." ***Ahern v. Ahern***, 15 S.W.3d 73, 79 (Tenn. 2000) (involving criminal contempt). *But see **Dukes v. Dukes***, No. M2014-00847-COA-R3-CV, 2015 WL 9946275, at *4 (Tenn. Ct. App. Aug. 13, 2015) (addressing ability to pay only in the context of the sanction imposed by the trial court in a civil contempt proceeding); *c.f.* ***Gibbs v. Gibbs***, No. E2015-01362-COA-R3-CV, 2016 WL 4697433, at *1 (Tenn. Ct. App. Sept. 7, 2016) (holding that civil contempt is a proper remedy for the willful failure to comply with an MDA incorporated into a final divorce decree, but requiring the alleged contemnor to prove that he did not have the ability to comply with the trial court's order in order to reverse the contempt finding, as discussed in detail, *infra*). Although Appellant's argument is couched in terms of willfulness, this Court has noted that the Tennessee Supreme Court "was quite specific in holding that willfulness and ability are two distinct findings." ***Martin v. Moats***, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006) (citing ***Ahern***, 15 S.W.3d at 79). In the context of civil contempt, willfulness simply refers to "acting contrary to a known duty" or conduct that is "intentional or voluntary rather than accidental or inadvertent." ***Konvalinka***, 249 S.W.3d at 357 (quoting ***State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust***, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006)). Regardless of how the issue is framed, we agree that the evidence in the record does not support the trial court's finding that Appellant had the ability to pay in this case.

As an initial matter, in order to determine whether Appellant had the ability to pay the obligation ordered by the trial court, we must first determine what obligation the trial court has ordered Appellant to pay. While this determination may be simple in the typical case, that is not the case here. There is no dispute that the parties entered into an agreement after the divorce decree was entered that altered the parties' obligations under the MDA. The parties, as well as the trial court, appear to assume that Appellant's obligation to protect Ms. Denton from foreclosure remained notwithstanding the modification by the parties. Accordingly, we likewise assume, arguendo, that Appellant's duty to protect Ms. Denton from foreclosure remained an obligation enforceable through the trial court's contempt power notwithstanding the parties' modification of the MDA.[6] While Appellant's duty to protect Ms. Denton from foreclosure is therefore undisputed, none of the trial court's orders actually indicate what specific action or payment is required to forestall foreclosure proceedings and therefore purge Appellant of his contempt. Rather, as noted above, the trial court merely ruled that Appellant would be incarcerated "until payment of the debt or further order of the Court." The Tennessee Supreme Court, however, has held that in order to support a finding of contempt, an order must "precisely spell[] out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required[.]" ***Konvalinka***, 249 S.W.3d at 355. Likewise, the record on appeal does not sufficiently describe the actions were required by Appellant to purge his contempt. The Statement of Evidence from the parties' hearings indicates that the loan secured by Ms. Denton's property was for $124,000.00. The

---

[6] We offer no opinion as to the correctness of the parties' assumptions.

Statement of the Evidence does not indicate, however, what remained owing on the loan at that time or what is required of Appellant to forestall foreclosure proceedings on the property. In her second contempt petition, however, Ms. Denton alleged that the outstanding debt on the loan totaled $135,594.51, which had been accelerated by the mortgage holder. Although the petition included copies of the notice provided to Ms. Denton concerning the foreclosure, the petition was not sworn to by Ms. Denton. Unsworn allegations are not evidence. *See Washington v. Tennessee DOC*, No. 01A-01-9603-CH-00131, 1996 WL 334359, at *1 (Tenn. Ct. App. June 19, 1996) ("Unsworn allegations of fact in pleading or brief do not create an issue as to facts shown by sworn evidence."). Likewise, counsel for both parties made various statements that $1,700.00 was required to delay or stop the foreclosure of Ms. Denton's property or that Appellant would be required to pay approximately $1,700.00 per month for sixty months to terminate the foreclosure proceedings. Like unsworn allegations, however, these statements do not constitute evidence. Rather, Tennessee courts have repeatedly held that statements of counsel are not evidence. *See, e.g.*, *Elliott v. Cobb*, 320 S.W.3d 246, 250 (Tenn. 2010) ("[S]tatements and arguments of counsel are neither evidence nor a substitute for testimony.") (citing *Metro. Gov't of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002)). The only other evidence contained in the record is Appellant's testimony at the December 2016 hearing, which does not concern this issue. Thus, we are unable to sufficiently determine what Mr. Denton was required to expend to purge his contempt; instead, we must conclude that the trial court's requirement that Appellant "pay[] the debt" refers to the only figure actually supported by the evidence: the $124,000.00 total figure contained in the Statement of the Evidence.

Based on this figure and the lack of evidence in this record concerning what smaller amount would allow Appellant to purge his contempt, we must conclude that Appellant met his burden to show an inability to pay sufficient to prevent his imprisonment. "Although the party to be held in civil contempt must have the ability to perform the act it is ordered to perform, . . . the burden of proof is on the contemnor to show the inability to pay." *Flowers*, 209 S.W.3d at 612 (citing *Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d 740, 743 (Tenn. 1971)). "When the defendant testifies under oath that he is without financial ability to conform, an adjudication that he has the ability to pay must rest upon convincing evidence so that the trier of facts may exercise his sound judicial discretion thereon." *Leonard*, 341 S.W.2d at 743–43. Of course, "a party cannot willfully disable himself from obeying an order of court and then set up his inability as a defense to a charge of contempt." *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (quoting *Gossett v. Gossett*, 34 Tenn. App. 654, 658, 241 S.W.2d 934, 936 (Tenn. 1951)). Thus, where a party has "intentionally placed himself in a position in which he would be unable to comply with the court's . . . order," the obligor may be found in contempt. If, however, the contemnor does not have the present ability to comply with the obligation, the contemnor "cannot be sentenced for repeated offenses as the trial judge decided, but only for a single act of contempt." *Hawk*, 855 S.W.2d at 583. Rather, "it is only when he

has the present ability to perform that he can be committed until he does perform." ***Gossett***, 241 S.W.2d at 936.

Here, the Statement of the Evidence indicates that Appellant's income has substantially decreased from the time of the divorce decree. As such, he no longer has sufficient income to meet his expenses. Nothing in the Statement of the Evidence disputes that Appellant's expenses are reasonable and necessary or that his income is in any way diminished through Appellant's own actions.[7] While the trial court made oral statements supporting its decision indicating that Appellant was able to take vacations with his current wife and live in a nice home, all the while refusing to pay his obligations, the Statement of the Evidence does not contain any evidence to support these oral findings. This is not the case where, in the absence of a transcript or statement of the evidence, we will presume that the trial court had sufficient evidence before it to support its findings. *See **In re M.L.D.***, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) ("When no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct.") (citing ***J.C. Bradford & Co. v. Martin Constr. Co.***, 576 S.W.2d 586, 587 (Tenn. 1979)). Rather, we must determine whether the Statement of the Evidence and the transcript from the January 12, 2017 hearing contain "convincing evidence" to support the trial court's finding that Appellant's claimed inability to pay is not accurate or credible. ***Leonard***, 341 S.W.2d at 743–43. Here, the Statement of the Evidence indicates that Appellant is retired due to poor health, that his income is fixed, and that his income is insufficient to cover his expenses, which were in no way disputed by Ms. Denton. The Statement of the Evidence also contains no indication of the value of any assets that Appellant may sell in order to meet his financial obligations. Clearly, taking the only figure actually present in the Statement of the Evidence, Appellant has shown that he is unable to pay $124,000.00 to satisfy the debt against Ms. Denton's property. The trial court's decision to hold Appellant indefinitely in jail until "payment of the debt" is therefore reversed. Consequently, we order that Appellant be immediately released from incarceration.

## Conclusion

The judgment of the Henderson County Chancery Court in ordering the incarceration of Appellant Randall Eugene Denton until the "payment of the debt" is hereby reversed and this cause is remanded for further proceedings as are necessary and consistent with this Opinion. Because of the unique facts of this case, we exercise our discretion to waive the costs of this appeal.

---

[7] The Statement of the Evidence indicates that Appellant was "questioned" about the expenses, but provides no elaboration as to the questioning.

- 8 -

_____
J. STEVEN STAFFORD, JUDGE