IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 21, 2021 Session

**DERIC J. MEAD v. JAMES LOYD TUCKER**

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2018-CV-623  Joe H. Thompson, Judge**
_____

**No. M2020-01512-COA-R3-CV**
_____

In this personal injury negligence action, the defendant died while the litigation was pending. The plaintiff failed to file a motion for substitution of party within ninety days of the original defendant's death being suggested on the record. Over a month later, the plaintiff moved the trial court to enlarge the time to substitute the parties pursuant to Tennessee Rule of Civil Procedure 6.02(2). The trial court denied the motion for an enlargement of time. Because the trial court did not abuse its discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, J., and KRISTI M. DAVIS, J., joined.

Thomas J. Bailey, Goodlettsville, Tennessee, for the appellant, Deric J. Mead.

Eric C. Lyons and Thomas W. Shumate, IV, Brentwood, Tennessee, for the appellee, James Loyd Tucker.

**OPINION**

## I.     BACKGROUND

In June 2018, the appellant Deric J. Mead ("Plaintiff") filed a complaint in the Circuit Court for Sumner County ("the trial court") against James Loyd Tucker ("Tucker") alleging negligence stemming from a June 2017 car accident in which Plaintiff was injured. Plaintiff requested prejudgment interest, a jury trial, and damages not to exceed $100,000. Plaintiff issued summonses to Tucker and to his uninsured/underinsured motorist carrier, Tennessee Farmers Mutual Insurance Company ("the UM carrier"). In November 2018,

the UM carrier answered the complaint and served Plaintiff with written discovery requests. Plaintiff did not respond to the discovery requests. Six months later, in May 2019, the UM carrier filed a motion to compel discovery against Plaintiff. Plaintiff did not respond. At this point, Plaintiff returned his unserved June 2018 summons to Tucker with the notation "never send [sic] by mail."

Plaintiff issued a new summons to Tucker. Tucker was served on May 13, 2019. Later that month, Tucker moved to dismiss Plaintiff's prejudgment interest claim, arguing that prejudgment interest is not recoverable in personal injury actions. In June 2019, the trial court granted the UM carrier's motion to compel discovery, noting that Plaintiff's counsel did not attend the motion hearing. By the parties' agreement, the prejudgment interest claim was dismissed and the UM carrier was dismissed from the action without prejudice.

On June 24, 2019, Tucker answered the complaint. At some point, Plaintiff moved out of state. Plaintiff's discovery responses, which were due in August 2019, remained incomplete for many months. In March 2020, Tucker moved to compel Plaintiff to respond to discovery requests but later withdrew the motion after the late discovery issues were resolved out of court. Tucker passed away in May 2020.[1] On May 22, 2020, Tucker's counsel served a suggestion of death upon the record.

On August 20, 2020, Plaintiff filed his first amended complaint without leave of court or consent of opposing counsel. The amended complaint was substantively the same as his original complaint, save the addition of Mark Tucker and Pam McDuffy in the caption as personal representatives of Tucker's estate ("Defendants"). Defendant Mark Tucker was served the amended complaint on September 4, 2020. Defendant McDuffy was served the amended complaint on an unspecified date.

On September 4, 2020, Defendants filed a motion to dismiss and to strike Plaintiff's amended complaint. In their motion, Defendants asserted that Plaintiff had ninety days from May 22, 2020 in which to move to substitute Defendants for Tucker; that the ninetieth day passed on August 20, 2020; and that Plaintiff had yet to file a motion for substitution of the parties pursuant to Tennessee Rule of Civil Procedure 25.01, thus mandating dismissal of the action. Further, Defendants argued that Plaintiff's amended complaint should be stricken because he filed it without leave of court or the adverse party's consent over a year after Tucker's answer, in violation of Tennessee Rule of Civil Procedure 15.01. On September 4, 2020, Plaintiff was notified that the trial court would hear Defendants' motions on September 28, 2020.[2]

---

[1] Tucker's deposition was not taken before he passed away.

[2] The copy of Defendants' amended notice of hearing in the appellate record indicates that it was filed on September 9, 2020, but the parties appear to agree that Plaintiff was notified of the hearing date on

On September 22, 2020, Plaintiff moved the trial court to enlarge the time to substitute the parties pursuant to Tennessee Rule of Civil Procedure 6.02(2). He argued that his counsel's neglect in filing an amended complaint instead of a motion to substitute the parties was excusable because of COVID-19-related reasons and that Defendants would not be prejudiced by the delay. Plaintiff alternatively argued that the amended complaint should be treated as a motion to substitute the parties. Defendants responded.

On September 25, 2020—the Friday before the Monday motion hearing—Plaintiff filed the following: a supplemental memorandum of law and a sworn declaration of counsel in support of his Rule 6.02(2) motion; a Rule 25.01 motion to substitute the parties; a Rule 15.01 motion to amend the complaint; a proposed amended complaint asserting claims against Defendants; and a response and memorandum opposing Defendants' motion to dismiss. These filings were served on Tucker's counsel who never entered an appearance on behalf of Defendants. In his declaration, Plaintiff's counsel elaborated:

> On May 22, 2020, Plaintiff received from Defendant's Counsel, Notice of Suggestion of Death regarding Defendant James Loyd Tucker. Plaintiff's counsel has an office policy for legal assistants to calendar deadlines and to calendar a reminder of the deadline ten days prior to the deadline. In this case, the ten day reminder to file a Motion for [substitution] of parties and an Amended Complaint was not calendared, only the ninety day deadline was calendared. I was, therefore, working with limited time constraints on the 90th day for timely filing of the necessary pleadings for substitution of parties.

> On August 20, 2020, because of Covid 19, I was working remotely in a location separate from the subject case file and separate from the legal assistant handling the file. I mistakenly believed that I had gathered all necessary documents for proper filing, to include the Motion for substitution of parties and a sufficiently drafted First Amended Complaint. I inadvertently failed to download the proper Motion with the First Amended Complaint, not realizing it was uploaded in two separate files. My failure to realize the error prior to [] filing the First Amended Complaint without the proper Motion on August 20, 2020 was an oversight, not likely to have happened if working in close proximity to the entire case file and in close proximity to my legal assistant, as was the case before working remotely due to Covid 19 recommendations for social distancing and limited in-person interactions.

September 4.

The trial court heard the outstanding motions on September 28, 2020. The trial court questioned Plaintiff's counsel:

THE COURT: I think you need to respond to his arguments first. Let me ask this. The time ran on August 22nd, is that right, or August 20th?

MR. BAILEY: August 20th, Your Honor.

THE COURT: And you're saying you created a document on August 20th and you just failed to file it?

MR. BAILEY: I'm saying that on August 20, I filed a pleading. I filed a pleading that purported to substitute the parties for the personal -- or the Defendant for the personal representatives. I did that, that document was the Amended Complaint. That Amended Complaint was filed without a motion per se to substitute and without a motion to amend [for] leave [of] the Court to do so. That was done in error. And the error was from, I downloaded the file from my legal assistant's computer working at home and I assumed -- I glanced at it and assumed it was all there. We typically put as -- with the Amended Complaint here, you know, part of the same file includes exhibit, the motion, so on and so forth. So I should have known better. I'm not blaming my assistant. I accept the blame. I am saying that it was excusable neglect within the rule of -- the Tennessee Rules of Civil Procedure 6.02.2 . . . .

THE COURT: . . . So I'm reading your [supplemental memorandum of law] to say that [there were] two separate files, one was a Motion to Substitute Parties and the other was a First Amended Complaint.

MR. BAILEY: Well, I don't know exactly what kind of motion it was, but I just know that it was two separate files [and] that I chose to only download one because I assumed it was the right one because it said First Amended Complaint. So the assumption was, I don't know what was exactly in the other file, but that's my belief that because it wasn't in the file that it normally is.

THE COURT: Have you looked at it since [Defendants' motion to dismiss] was filed back in the first part of this month?

MR. BAILEY: I haven't. I created a different motion.

THE COURT: I'm sorry?

- 4 -

MR. BAILEY:  I haven't.

THE COURT:  Okay.  But you still have it somewhere there, right?

MR. BAILEY:  Well, I don't -- I don't have it and I don't know if my legal assistant has it since I told her I created a different one.

At the close of the hearing, the trial court advised that it would review relevant caselaw and try to "figure out what the reasons for [Plaintiff's] neglect were."  The court instructed the parties to draft proposed orders.  By final order entered October 6, 2020, the trial court denied Plaintiff's motions and granted those of Defendants.  The trial court ordered that the claims set forth in Plaintiff's complaint, improperly filed first amended complaint, and proposed first amended complaint, whether against Tucker or Defendants, be dismissed with prejudice.  Plaintiff appealed.

## II.    ISSUES

Plaintiff raises one issue on appeal which we restate as: Whether the trial court abused its discretion in denying Plaintiff's motion to enlarge time to substitute the parties, filed on September 22, 2020, pursuant to Tennessee Rule of Civil Procedure 6.02(2).

## III.    STANDARD OF REVIEW

"Whether the trial court errs in granting or denying an enlargement of time under Rule 6.02 is reviewed under the abuse of discretion standard."  *Dubis v. Loyd*, 540 S.W.3d 4, 12 (Tenn. Ct. App. 2016) (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006)).  This standard of review "does not permit reviewing courts to second-guess" the trial court "or to substitute their discretion" for that of the trial court.  *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).  An abuse of discretion occurs when a court "'causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'"  *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 210 (Tenn. 2019) (quoting *Lee Med.*, 312 S.W.3d at 524).

## IV.    DISCUSSION

In cases like this one where a party dies and the claims against that party are not

extinguished,[3] Tennessee Rule of Civil Procedure 25.01 sets forth the procedure for substitution:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of process. Unless the motion for substitution is made not later than ninety (90) days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Tenn. R. Civ. P. 25.01(1). On its face, Rule 25.01 explicitly directs the dismissal of an action if no motion for substitution of the parties is made within ninety days of the filing of a suggestion of death. However, Tennessee Rule of Civil Procedure 6.02 "grants the trial judge broad discretion to enlarge many of the procedural time limitations prescribed by the Rules of Civil Procedure." *Douglas v. Est. of Robertson*, 876 S.W.2d 95, 97 (Tenn. 1994). Rule 6.02 states in pertinent part:

> When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, . . . (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect[.]

Tenn. R. Civ. P. 6.02. Thus, "[w]here an enlargement of time is requested after the original time has elapsed, Rule 6.02(2) requires the party requesting the enlargement to show that its failure was due to excusable neglect and that the opposing party has not been prejudiced." *Williams*, 193 S.W.3d at 550 (citing *Douglas*, 876 S.W.2d at 97–98).

The Tennessee Supreme Court adopted the United States Supreme Court's definition of excusable neglect:

> [A] party's failure to meet a deadline may have causes ranging from forces beyond its control to forces within its control . . . . The former will almost always substantiate a claim of excusable neglect; the latter will not. However, neglect extends to more than just acts beyond a party's control and

---

[3] "No civil action commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party, but may be revived[.]" Tenn. Code Ann. § 20-5-102.

intential acts. It encompasses "simple, faultless omissions to act and, more commonly, omissions caused by carelessness."

*Id*. at 550–51 (quoting *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp.*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001)) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). When determining whether missing a deadline was the result of excusable neglect, courts must consider these factors: "(1) the risk of prejudice to parties opposing the late filing, (2) the delay and its potential impact on proceedings, (3) the reasons why the filings were late and whether the reasons were within the filer's reasonable control, and (4) the good or bad faith of the filer." *Id*. at 551 (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). "An attorney's mere oversight or negligence, without more, does not automatically amount to excusable neglect." *Ferguson v. Brown*, 291 S.W.3d 381, 388 (Tenn. Ct. App. 2008). Overall, "finding whether neglect is excusable is an equitable determination 'taking account of all relevant circumstances surrounding the party's omission.'" *Sizemore*, 56 S.W.3d at 567 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395).

Here, the trial court outlined several reasons supporting its determination that Plaintiff's counsel's actions did not constitute excusable neglect within the meaning of Rule 6.02(2). In its order, the trial court considered all of the factors, but highlighted the two factors regarding the reason for Plaintiff's delay and his good faith in these proceedings.

"[T]he courts have emphasized that the reasons leading to the delay remain a very important—perhaps the single most important—factor in determining whether neglect should be excusable." *Sizemore*, 56 S.W.3d at 569 (citations omitted). "In evaluating the reasons for delay, courts look at (1) whether the circumstances involved were under a party's own control, and (2) whether the party was paying appropriate attention to the matter in light of the surrounding circumstances." *Id*. at 569–70 (citations omitted). On appeal, Plaintiff renews his argument that his counsel's actions and inactions were partially outside of his control because COVID-19 social distancing recommendations caused his firm to work remotely, which resulted in the loss of "the safeguards of standard office protocols." On this point, the trial court soundly reasoned:

> The Court acknowledges, of course, that the ongoing COVID-19 pandemic is beyond any individual's control. However, Sumner County's "Safer at Home" Order included an express exception for "Legal and judicial services."
> . . .
>
> COVID-19 did not keep Plaintiff's counsel's legal assistants from reminding him about the deadline, nor does the pandemic absolve Plaintiff of this professional and ethical obligation to know and remember court deadlines.

- 7 -

COVID-19 did not cause Plaintiff's counsel to "inadvertently" download one document but not the other, not to check that he had the correct document downloaded, or to fail to take prompt action upon learning of the alleged mistake. Attorneys across the world have had to adapt their practices and contend with the general disruption wrought by the pandemic. Tennessee courts have gone to great lengths to keep its courts open. This Court declines to find that COVID-19 relieved Plaintiff of his duty to timely file the motion for substitution, particularly given that the Tennessee Supreme Court and the Governor have not seen fit to extend the Rule 25.01 deadline past August 20, 2020.[4]

Keeping in mind that the pandemic had been ongoing for approximately five months when Plaintiff missed the Rule 25.01 deadline, we agree with the trial court that the surrounding circumstances were under Plaintiff's control. Respectfully, five months was enough time to develop internal procedures to effect compliance with litigation deadlines, even when working remotely.

Further, what actually happened here has less to do with the pandemic than with counsel's inattention. As set forth below, the facts of this case do not lend themselves to a finding that counsel's inattention amounts to excusable neglect. In his declaration, Plaintiff's counsel declared under penalty of perjury that on the day of the Rule 25.01 deadline he "inadvertently failed to download the proper Motion [to substitute] with the First Amended Complaint, not realizing it was uploaded in two separate files." At the hearing, Plaintiff's counsel admitted that he "glanced" at the document and "assumed it was the right one because it said First Amended Complaint." Nothing in the record explains how counsel proceeded to the signature page of this five-page document, signed it, and then filed it without detecting that it was not a Rule 25.01 motion. Additionally, at least by September 4, 2020, when Defendants filed their motion to dismiss and motion to strike the amended complaint, Plaintiff was on notice that no Rule 25.01 motion had been docketed. So, the question of why Plaintiff delayed until September 22, 2020, to request a Rule 6.02(2) enlargement of time remains. Importantly, in its findings on the reason for the delay, the trial court made a credibility determination to which we must "extend a high degree of deference" and which we will not overturn "absent clear and convincing evidence to the contrary." *Higdon v. Higdon*, No. M2019-02281-COA-R3-CV, 2020 WL 6336151, at *7 (Tenn. Ct. App. Oct. 29, 2020). The court found:

During the Court's questioning at oral argument, Plaintiff's counsel was very noncommittal about what actually happened. He told the Court that he did not know precisely what kind of motion he had prepared on August 20 (although his declaration stated unequivocally that it was a motion for

---

[4] *See In Re: Covid-19 Pandemic*, No. ADM2020-00428 (Tenn. May 26, 2020).

substitution), whether he or his assistants still had a copy of it or had deleted it, or why he drafted a new motion that he then filed with the Court 36 days later. Plaintiff's counsel has not produced any copy of this supposed motion for the Defendant or the Court. Plaintiff's counsel has not explained why, if he had the motion prepared to file on August 20, he did not actually file his Motion to Substitute until over a month later [on] September 25. Plaintiff's counsel has not shown that the delay was due to any unique circumstances beyond his control. Plaintiff's counsel's evasive responses and purported lack of knowledge regarding the very subject of his sworn declaration calls into question the credibility of his claims.

There is not clear and convincing evidence in the record to contradict these findings. In short, the circumstances before, during, and after Plaintiff's August 20, 2020 deadline were under his control, and a proper Rule 25.01 motion could have been filed timely "had he made it a matter worthy of his attention" by reading the document before signing and filing. *Sizemore*, 56 S.W.3d at 571. Under circumstances such as these, "courts have been reluctant to find excusable neglect." *Id*. at 570 (collecting cases).

In its order, the trial court also considered the factor of Plaintiff's good or bad faith in relation to his Rule 6.02(2) motion. *Williams*, 193 S.W.3d at 551 (citing *Pioneer Inv. Servs. Co*., 507 U.S. at 395). The trial court noted Plaintiff's noncompliance with previous discovery deadlines, resulting in two motions to compel; his long delay in serving Tucker after filing the original complaint; and his "delay in reacting to Defendant[s'] dispositive motions—even [] with the very real threat of dismissal looming overhead." With these facts in mind, the trial court properly concluded that Plaintiff's "extensive noncompliance with the Court's deadlines to date and his unconvincing excuses in his papers and oral argument demonstrate bad faith." *Cf. Kenyon v. Handal*, 122 S.W.3d 743, 757 (Tenn. Ct. App. 2003) (finding no bad faith where movant had not missed other deadlines and had not requested other extensions of time).

On appeal, Plaintiff argues that his delay was minimal, as was its impact on the proceedings. Again, Plaintiff knew that the deadline to move to substitute the parties was August 20, and he knew, by September 4 at the latest, that he had filed an improper motion. When filing it on September 22, 2020, Plaintiff set the Rule 6.02(2) motion to enlarge time for a September 28 hearing. Under Rules 6.01 and 6.04(1), Plaintiff had to serve his motion to enlarge time "not later than five (5) days before" the hearing, excluding Saturdays and Sundays. Tenn. R. Civ. P. 6.01; 6.04(1). The local teleconferencing rules then in effect required Plaintiff to set his hearing with a "minimum of ten (10) calendar days' notice." Because Plaintiff's Rule 6.02(2) motion did not satisfy either of these rules, the trial court reasonably concluded that "these ongoing procedural deficiencies call into question the reasons for missing the deadline on August 20 and weigh against granting Plaintiff's Motion to Enlarge Time." Plaintiff's missteps "cannot be isolated from [his] failure to comply with other deadlines and magnif[y] both the prejudice to the defense and the effect

of the delay." *Williams*, 193 S.W.3d at 552.

Likewise, Plaintiff presses that the risk of prejudice to Defendants was minimal. He argues for reversal of the trial court's decision because no prejudice to Defendants has been established given that the lawsuit was in pre-trial status, his Rule 25.01 motion to substitute the parties was "only 36 days" late, and Defendants presumably "were already well aware of" Plaintiff's attempt to substitute them for Tucker. Plaintiff likens this case to *Dubis v. Loyd*, which held that a defendant would not be prejudiced upon substitution of a new party in the original plaintiff's place because the defendant "had notice from the beginning of the suit." *Dubis*, 540 S.W.3d at 14. The opposite facts are present here. As the personal representatives of Tucker's estate, Defendants were not involved in this years-long litigation until late in the game, nor were they served with the motion to substitute. Moreover, the *Dubis* court noted that there was no allegation of the movant's bad faith relative to the proceedings. *Id*. As previously discussed, that is not the case here. Just as he did in the trial court, Plaintiff also cites *Wagner v. Frazier*, 712 S.W.2d 109 (Tenn. Ct. App. 1986), a case in which excusable neglect was found "where the suit had been fully tried and the parties were awaiting a decision from the court and the motion was made eight days after the ninety day period had run." *Id*. at 113. Here, the trial court appropriately distinguished *Wagner* because Plaintiff's delay was much longer, the case had not been tried, and liability was "hotly contested."

On balance, the factors relating to the reasons for Plaintiff's failure to timely file a Rule 25.01 motion for substitution of the parties weigh in favor of the trial court's decision that the delay in filing the motion was not the result of excusable neglect. We conclude that the trial court did not abuse its discretion in denying Plaintiff's motion for an enlargement of time under Rule 6.02(2) after finding that there was no excusable neglect. The trial court's extensive order set forth the rationale for its decision with due consideration of the appropriate factors. Although the trial court's order was a party-prepared order, the record does "not create doubt that the decision represents the trial court's own deliberations and decision." *Smith v. UHS of Lakeside, Inc*., 439 S.W.3d 303, 316 (Tenn. 2014). Upon our study of the record, the relevant facts established therein, and the applicable legal principles, we conclude that the trial court's decision "was within the range of acceptable alternative dispositions." *Lee Med*., 312 S.W.3d at 524. Accordingly, we affirm.

## V.    CONCLUSION

We affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Deric J. Mead.

_____
JOHN W. McCLARTY, JUDGE