IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2017 Session

## HOOVER, INC. v. ASHBY COMMUNITIES, LLC, ET AL.

**Appeal from the Chancery Court for Williamson County
No. 38167     James G. Martin, III, Judge**

_____

### No. M2016-01877-COA-R3-CV

_____

An asphalt paving company brought suit against the developer of a subdivision, and its managing member and guarantor, for breach of contract based on the developer's failure to pay for services rendered under the contract.  The developer answered, asserting multiple affirmative defenses, and counterclaimed, asserting that the company breached the contract, violated the Tennessee Consumer Protection Act, and mispresented that it would perform the work for the price specified in the contract.  The trial court held that the developer breached the contract by failing to pay and awarded damages, interest, and attorney's fees to the paving company.  The developer appeals.  Upon a thorough review of the record, we affirm the judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court of
Williamson County Affirmed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

John A. Barney, Franklin, Tennessee, for the appellants; Ashby Communities, LLC, and John Powell.

G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellee, Hoover, Inc.

### OPINION

### FACTUAL AND PROCEDURAL HISTORY

Ashby Communities, LLC, is the owner and developer of the King's Chapel subdivision in Arrington, Tennessee; John Powell ("Powell"), is the managing member and guarantor of Ashby and, at all times pertinent to this case, was responsible for Ashby's contractual matters.  Hoover, Inc., is a company engaged in, *inter alia*, selling road materials and providing labor to lay the materials to subdivision developers.  In the

course of developing the subdivision, Ashby issued a request for bids for work on roads in the King's Chapel subdivision. On or about October 23, 2009, Ashby accepted Hoover's proposal, styled "Proposal and Contract," wherein Hoover offered to furnish repair work on Meadow Bridge Lane and Meadow Brook Boulevard in Phase II for the total sum of $10,025 and construction work on five roads in Phase III, for the sum of $143,775. On that same date, Powell executed an Application for Credit prepared by Hoover, wherein Hoover agreed to extend credit to Ashby for materials purchased from Hoover; Powell signed the application as guarantor. On November 10, 2009, Ashby accepted another Proposal and Contract issued by Hoover (the "contract"), which did not include a reference to the repairs to be done to Phase II and which maintained the cost for Hoover's work under the Contract at $153,800; there were no other changes to the October 23 proposal.

Hoover began work at the subdivision on November 12, 2009. At the end of that month, Hoover billed Ashby for $92,588.22, representing the amount due for work performed during the month of November. Ashby did not pay the invoice, and Hoover ceased work at the subdivision on December 14. On February 18, 2010, Hoover recorded a Notice of Mechanic's and Materialmen's Lien on the subdivision property in the amount of $92,588.22 for materials and labor Hoover provided. On April 26, 2010, Hoover filed suit against Ashby and Powell (hereinafter collectively "Ashby" unless otherwise noted), seeking to recover the unpaid amount for the materials and labor, pre-judgment interest, attorney's fees, and the costs of collection. Ashby answered, raising the following affirmative defenses: (1) Hoover exaggerated the amount of its lien in violation of Tennessee Code Annotated section 66-11-139,[1] (2) Hoover exaggerated the amount of its mechanic's lien, (3) Hoover breached the contract, (4) Hoover failed to mitigate its damages, (5) Hoover breached its agreement with Ashby, (6) unclean hands, (7) unjust enrichment, (8) estoppel, and (9) fraud.

On August 1, 2014, Ashby moved to join an adjoining landowner, Land Investment Group, LLC ("LIG"), as a necessary party and to continue the trial date. Ashby asserted that LIG should be joined in the instant suit because it had filed a separate suit against Hoover alleging that the property description in the mechanic's lien

---

[1] Tennessee Code Annotated section 66-11-139 provides:

> If, in any action to enforce the lien provided by this chapter, the court finds that any lienor has willfully and grossly exaggerated the amount for which that person claims a lien, as stated in that person's notice of lien or pleading filed, in the discretion of the court, no recovery may be allowed thereon, and the lienor may be liable for any actual expenses incurred by the injured party, including attorneys' fees, as a result of the lienor's exaggeration.

erroneously included LIG's property.[2]  On August 18, the court entered an order granting the motion to join LIG and denied Ashby's request for a continuance.

LIG answered the Complaint, asserting as affirmative defenses that Hoover failed to comply with Tennessee Code Annotated section 66-11-139, exaggerated its lien, failed to state a claim for relief, and lacked privity and standing; LIG also asserted a counterclaim, raising claims of negligence in preparation of the materialmen's lien, libel of title, and violations of the Tennessee Consumer Protection Act ("TCPA").  LIG also requested that the court quiet title to its property.

On February 13, 2015, Ashby moved to amend its answer to assert a counterclaim for violation of the TCPA, breach of contract, and misrepresentation; the motion was granted on March 11, 2015.

On April 27, 2015, LIG filed a motion seeking a declaratory judgment that the mechanic's lien was "invalid and void."  A hearing was held on the motion and on July 30, the court entered an order, *inter alia*, declaring that the notice of lien filed by Hoover did not adversely impact LIG's title to its property.

On June 15, 2015, Hoover filed a motion for partial summary judgment as to LIG's claims for negligence and libel of title, as well as the TCPA claims raised against it by LIG and Ashby.  On May 6, 2016, the court entered an order *nunc pro tunc* to August 21, 2015, holding that LIG's causes of action for negligence, violation of the TCPA and libel of title were barred by the applicable statute of limitations; the court also held that LIG's request that the court quiet title to its property had been resolved in an order entered July 30, 2015.

The case proceeded to trial on August 25 and 26, 2015.  On June 30, 2016, the court entered a memorandum and order (the "June 30 Order" herein), holding that Ashby breached the contract.  The court awarded Hoover $89,739.52 for work performed, $104,995.23 in interest, and $59,559.42 in attorney's fees; Ashby's motion to alter or amend the judgment was denied.  Ashby appeals, raising several issues: whether the Chancery Court incorrectly *sua sponte* reformed the contract at issue; whether the Chancery Court erred in finding that Ashby committed the first material breach of the contract; whether the Chancery Court erred in dismissing Ashby's counterclaims; whether Hoover presented sufficient evidence of the reasonableness of its attorney fees; and whether the dilatory conduct of Hoover precludes an award of pre-judgment interest.

---

[2]  The motion did not specify whether LIG should be joined as a defendant or plaintiff.

**STANDARD OF REVIEW**

This case was tried by the court sitting without a jury, so we review the factual findings *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); Tenn. R. App. P. 13(d)). To preponderate against a trial court's finding of fact, the evidence has to support another finding of fact with greater convincing effect. *Watson*, 196 S.W.3d at 701 (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We review the court's legal conclusions *de novo* with no presumption of correctness. *Watson*, 196 S.W.3d at 701 (citing *Campbell,* 919 S.W.2d at 35). When credibility of witnesses and the weight to be given testimony are involved, we afford considerable deference to the trial court, as the trial judge has had the opportunity to observe the witness' demeanor and to hear the in-court testimony. *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011) (citing *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997)).

**DISCUSSION**

**I.     Breach of Contract**

As an initial matter we address Ashby's contention that the trial court *sua sponte* reformed the contract when it held that the contract was for construction of three roads instead of five; Ashby asserts that "whether the contract called for the construction of three roads rather than five roads is vital to the determination of whether Hoover breached the contract by billing Ashby for more than the amount of work that had been completed at the time." Ashby argues that this was error because, first, Hoover did not request reformation and, second, the evidence did not support a finding of mutual mistake or unilateral mistake on the part of Hoover that would support the court's reforming the contract. We do not agree that the court reformed the contract; to the contrary, the court properly held that payment was to be based on work performed and materials supplied during a billing period. As more fully explained hereinafter, whether the contract called for construction of three roads or five roads is not determinative of the issue of breach.

The trial court found that "Ashby . . . refused to pay Hoover anything it owed on the invoice received in December 2009" ("November Invoice") and concluded that "Ashby's nonpayment of Hoover's invoice constitute[d] nonperformance of the Terms and Conditions of the Contract by Ashby." Ashby did not pay the November invoice; it argues, however, that Hoover first breached the contract by failing to accurately bill Ashby for the work performed. Ashby argues that Hoover overbilled because, "[e]ven giving every benefit of the doubt to Hoover, it still performed less than fifty percent

4

(50%) of the work called for by the contract, yet was seeking to collect on nearly 70% of the total contract price."

The payment provision of the contract stated:

Payment in full for all work performed hereunder during any month shall be made not later that [sic] the tenth (10th) day of the month next following. Final and complete payment for all work performed hereunder shall be made not later that fifteen (15) days after the completion of such work.

Contrary to Ashby's argument, payment under the contract is not based on the percentage of work completed, but is made for "all work performed" during a given month. Accordingly, Ashby was obligated to pay for "all work performed" during the month of November. While the trial court did find that there was some overbilling on the November Invoice, the trial court found that the overcharge was negligible.[3]

After a careful review of the record, we conclude that the court correctly interpreted the contract and that testimony and other evidence relied upon by Ashby does not preponderate against the trial court's determination that Hoover properly billed Ashby for the work that was performed during the month of November 2009, and that any overbillings were not an attempt to mislead or defraud Ashby. We find no error in the holding that Ashby first breached the contract by failing to pay the November 2009 invoice.

## II.    Ashby's Counterclaim

In its brief on appeal, Ashby asserts that it "brought a counterclaim against Hoover because roads were failing on which Hoover had performed work."[4] In the portion of the June 30 Order which addressed Ashby's argument that Hoover breached the contract, the court held:

---

[3]  The trial court found:

The overcharge was negligible. Powell did not discover the overcharge in the materials listed in the invoice until he received the weigh tickets five years later. Because of the lump-sum nature of the Contract, Hoover billing slightly above what it should have billed based on materials supplied would have had the ultimate effect of reducing the balance owed on the Contract had the job been completed. Any overbilling on the November, 2009 invoice would therefore not impact the total Contract price.

Ashby does not contest this holding.

[4]  Upon our review of Ashby's counterclaim, we do not find a claim for negligent construction.

5

Ashby's main focus in its argument is its claim that Hoover's work was deficient. The Contract, if complied with, required Hoover to lay base stone at a minimum eight inches. The core samples taken by GEOServices on King's Camp Pass do not establish that Hoover failed to lay the required base layer of stone, but merely that King's Camp Pass lacked eight inches of base stone at the time of testing in 2015. Ashby has failed to prove that it was due to Hoover's deficiency that this failure exists. In fact, the evidence establishes that Hoover only laid four inches of base stone before leaving the job site in December 2009. Sessions was required to lay eight inches of base stone. It is likely that GEOServices was sampling the work of Sessions or some other contractor. GEOServices was not sampling the work of Hoover.

Ashby does not assign specific error with respect to the court's holding; rather Ashby contends that "the Court's determination that Ashby did not prove its breach of contract claim because of some stone being washed away is against the weight of the evidence submitted and should be altered to grant Ashby a judgment for Hoover's inadequate work."

Ashby's proof relative to Hoover's allegedly deficient work was presented largely through the testimony of a civil engineer, Jerry Gammon, an employee of GEOServices, a company hired by Ashby to investigate the cause of road failure in the subdivision; Mr. Gammon was qualified as an expert witness in road construction monitoring. Mr. Gammon testified that he was in the King's Chapel subdivision at various times during the summer of 2015 doing field testing to determine the asphalt and base stone thickness at certain sections of one of the roads on which Hoover had worked in November 2009. Mr. Gammon expressed the following opinions relative to the deficiencies he identified:

Q. And what is your opinion regarding the most likely cause of those road failures?
A. One would be they are minimum base stone thickness or subgrade issue.
Q. Do you have any evidence that it's a subgrade issue?
A. No.
Q. Are you aware of anybody that has done any work to determine whether it's a subgrade issue?
A. No.
Q. So is it more likely than not that the major cause of the road failure out there is the lack of appropriate base stone?
A. With the information we've gathered that's what I would say is the likely failure.
Q. In your opinion, in the areas where there's less stone than required, where would -- well, strike that. Let me back up.

6

When you are doing your analysis of the base stone, can you tell us, based on your opinion, if there's a shortage, whether or not that shortage would come from the first four inches of stone or the second four inches of stone?

A. I can't determine that.

Q. Well, when you're looking -- and you were out there looking at this road. When you look at the curbs and the gutters, do those help you at all in determining whether or not it's the top layer, the four-inch top layer that would be deficient, or the bottom four-inch layer that would be deficient?

A. Looking at the existing surface elevation of the asphalt, I would presume it's the initial layer of base stone that is shy.

MR. BOULDIN: If your Honor please, I object to the speculation.

THE COURT: He can't presume anything.

BY MR. BARNEY:

Q. Is it your opinion that that's the likely -- that that's the likely problem, is that it's not enough in the initial four-inch layer?

A. Yes, that is my opinion.

THE COURT: Based on your observation of the curbs?

THE WITNESS: Based on my observation of the curb and the existing binder elevation, surface elevation.

Relative to this issue, Hoover cites testimony, primarily from Mr. Powell, establishing that, since Hoover left the subdivision in December 2009, various other road contractors, including Sessions Paving Company, have done road work of various types in the subdivision, including laying base stone, and that several roads in the subdivision were impacted by the May 2010 flood in Middle Tennessee. The trial court referenced this proof in its ruling.

After a careful review of the testimony and exhibits, we conclude that the evidence does not preponderate against the trial court's determination that Ashby failed to prove that any deficiencies in the roads on which Hoover performed paving services was due to Hoover's inadequate performance of its contractual duties. We find no error in the trial court's conclusion that Hoover did not breach the contract by failing to adequately perform its contractual duties.

## III. Attorney's Fees

The contract contained a provision allowing Hoover to recover attorney's fees incurred as a result of the breach; in accordance with that provision, the court awarded fees to Hoover in the amount of $59,559.42. In its ruling on this issue, the court stated:

G. Sumner Bouldin, Hoover's counsel of record, tendered an affidavit reflecting attorney's fees and expenses incurred by Hoover in the amount of

7

$59,559.42. Boulding was cross-examined by Ashby. As shown by the procedural history in this case, it was unduly complicated and spanned five years. The complexity and duration of the case was the result of Ashby and Powell's litigation tactics. The Court finds the requested fees and expenses reasonable. . . .

Following entry of the judgment, Ashby filed a motion to alter or amend the judgment, asserting, in part, that the court "improperly awarded attorney's fees . . . without any real accounting of the time of its attorneys. . . [;]" the motion was denied, with the court holding in pertinent part:

> Third, Defendants claim the proper mechanism was not used to determine the reasonableness of Plaintiff's attorney's fees. Defendants had a full opportunity to cross examine plaintiff's attorney, Mr. Bouldin, regarding the fees and expenses incurred by plaintiff and, if they were unsatisfied with the proof provided, could have requested a continuance to obtain further records and information. Defendants did not do this. Therefore, the Court finds it used the correct standard for considering reasonableness of the attorney's fees awarded Plaintiff.

Ashby contends: (1) the trial court erred in considering the fact that it took five years to get the case to trial, asserting that this "should not be a factor in the reasonableness of the fee"; (2) that Ashby did not have a "meaningful opportunity" to cross-examine Hoover's counsel because none of his billing statements were provided to Ashby or the court; and (3) the court erred in "fail[ing] to specify the 'litigation tactics' upon which it relied in determining that the large amount of attorney's fees was warranted."

The standard we apply in reviewing awards of counsel fees was set forth in *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011):

> [A] determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich,* 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester,* 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010); *Keisling v. Keisling,* 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005). The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, *Williams v. Baptist Mem'l Hosp.,* 193 S.W.3d 545, 551 (Tenn. 2006); *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the

evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010).

In considering the amount to be awarded, the trial court is to be guided by the factors at Tennessee Supreme Court Rule 8, Rules of Professional Responsibility 1.5.[5] *Wright*, 337 S.W.3d at 176-77. While acknowledging the importance of factors specified in the code of ethics, this Court has also cautioned that "ultimately the reasonableness of the fee must depend upon the particular circumstances of the individual case." *White v. McBride,* 937 S.W.2d 796, 800 (Tenn. 1996) (citing *Hail v. Nashville Trust Co.,* 212 S.W.2d 51 (Tenn. 1948)).

We have reviewed the portion of the proceedings in which Hoover's counsel presented the application for fees. As noted by the court, Ashby's counsel did not express any reservation about proceeding with the hearing, lack of preparation, or request a continuance to review Hoover's counsel's billing records. In its ruling, the trial court made reference to the factors at Supreme Court Rule 8, particularly factors (1) and (7). Hoover's counsel submitted his affidavit and was cross-examined on the same; he was examined specifically with reference to the course of litigation with LIG, which was necessitated by Ashby's decision to join LIG in this litigation.

Applying the appropriate standard of review, the trial court properly held a hearing on the application and applied the correct legal standards in considering it; the award was based on credible evidence and did not cause an injustice to Ashby. The court did not abuse its discretion in making the award.

---

[5] Rule 8, RPC 1.5 states in pertinent part:

> (a) . . . The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

## IV.    Interest

Ashby contends that the award of interest from December 2009 to June 30, 2016, which it characterizes as pre-judgment interest, was "inequitable" and "excessive" and should have not started to accrue until January 2014, when Ashby's current counsel "began to push the case toward resolution."  This argument, however, is based on the erroneous premise that the court awarded pre-judgment interest, which is discretionary. The interest awarded was pursuant to terms of the contract:

> Interest at the highest rate allowable under the laws of the state which the work is done, or one and one half percent (1 /1 2%) per month, whichever is less, shall be charged and paid on all unpaid balances from the due date to the date we receive payment.

Because Ashby breached the contract by failing to timely pay Hoover's invoice, Hoover is entitled to recover interest on the unpaid balance, which the trial court calculated at 1.5% of the $89,739.52 principal per month from December 2009 through June 30, 2016; the amount of the award is supported by the evidence.

## V.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

RICHARD H. DINKINS, JUDGE
