# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 8, 2025 Session

## SHIRLEY BUCKLEY ET AL. v. JACKSON RADIOLOGY ASSOCIATES, P.A. ET AL.

### Appeal from the Circuit Court for Madison County
### No. C-16-210     Donald H. Allen, Judge

_____

### No. W2023-01777-COA-R3-CV

_____

This is a healthcare liability/wrongful death case. Appellees, healthcare providers, alleged that appellant abused the discovery process in failing to make her expert available for deposition within the time set by the trial court's scheduling order. Appellant moved for amendment of the scheduling order and for continuance of the trial date. The trial court denied appellant's motions and granted appellees' motion to exclude appellant's expert. The exclusion of appellant's expert resulted in the trial court granting appellees' motion for summary judgment, thus dismissing appellant's lawsuit. Under the circumstances, the trial court's exclusion of appellant's expert (and the resulting dismissal of her lawsuit) was too harsh a punishment. Vacated and remanded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

W. Bryan Smith, Memphis, Tennessee, for the appellant, Shirley Buckley.

Marty R. Phillips and Lyndy Michelle Greenway Sellers, Jackson, Tennessee, for the appellees, West Tennessee Medical Group, Inc., Jackson Radiology Associates, P.A., Timothy Ray Crossett, M.D., Thomas Channing Head, M.D., and John W. Neblett, Jr., M.D.

# OPINION

## I. Background

On August 16, 2016, Appellant Shirley Buckley, individually, and on behalf of the heirs and beneficiaries of Sylvia Buckley ("Decedent"), filed this healthcare liability/wrongful death lawsuit against West Tennessee Medical Group, Inc., Jackson Radiology Associates, P.A., Timothy Ray Crossett, M.D., Thomas Channing Head, M.D., and John W. Neblett, Jr., M.D. (together, "Appellees"). In her complaint, Appellant averred that Decedent "died on April 25, 2015, due to an intracerebral hemorrhage secondary to a cortical vein thrombosis." Appellant asserted claims for negligence in Decedent's diagnosis and treatment. Appellees denied all liability in their respective answers.

The lawsuit hit an initial snag when the Appellees moved for a qualified protective order under Tennessee Code Annotated section 29-26-121(f). The lawsuit was stayed pending the outcome of the appeal of *Willeford v. Klepper*, 597 S.W.3d 454 (Tenn. 2020), which ostensibly settled the law governing section 29-26-121(f) qualified protective orders. On February 2, 2021, an agreed order lifting the stay was entered. On April 27, 2021, the trial court heard Appellees' petition for qualified protective order, which it granted by order of August 18, 2021.

After the more than four-year delay due to Appellees' motion for protective order, the trial court conducted a status conference on September 17, 2021. Trial was set for January 2023 and was later continued to September 19, 2023. On November 8, 2021, the trial court entered a scheduling order giving Appellant until April 22, 2022, to identify expert witnesses. On January 19, 2023, the trial court granted Appellant's motion to amend the scheduling order and entered an amended scheduling order, under which Appellant was required to identify its expert(s) on or before February 13, 2023. Appellees were required to identify their expert(s) on or before April 10, 2023. All experts were to be deposed by June 12, 2023.

Pursuant to the amended scheduling order, on February 13, 2023, Appellant disclosed her expert, Dr. Domenic Esposito. On February 14, 2023, Appellees' attorney emailed Appellant's attorney, "Please provide us with dates on which we can take the discovery deposition of Domenic Esposito, MD." On March 16, 2023, Appellees' attorney emailed Appellant's attorney, "Following up on my email of February 14 . . . . Please provide dates for Dr. Esposito's depo." According to Appellant's brief, from March 2023 forward, Appellant's attorney attempted to contact Dr. Esposito to secure deposition dates but discovered that "Dr. Esposito's wife had filed for divorce, and he was not coping well with the situation at all. Indeed, it caused him health problems and he was not scheduling anything." Appellees assert that Appellant was incommunicative regarding this development.

On June 12, 2023, the day by which all depositions were to be completed per the amended scheduling order, *supra*, Appellant moved to revise the amended scheduling order to extend the deposition deadline. In response to Appellant's motion to revise the amended scheduling order, on July 7, 2023, Appellees filed a motion to exclude Appellant's expert witness along with a motion for summary judgment (in the event the trial court granted the motion to exclude). In the motion to exclude, Appellees stated that the last correspondence they received from Appellant's counsel was "[o]n Friday, June 9, 2023, . . . three days before the expert deposition deadline, [when] [Appellant's] counsel called [Appellees'] counsel to inform him that he would be filing a motion to extend the expert deposition deadline expiring on Monday, June 12, and that he would provide some dates for Dr. Esposito's deposition." Appellees asserted that, "despite [Appellees'] requests and the Court's deadlines, [Appellant] has failed to provide any available dates for the discovery deposition of . . . Dr. Esposito." In response to Appellees' motion to exclude Appellant's expert and motion for summary judgment, on July 24, 2023, Appellant filed a "Combined Motion to Continue Trial Date, to Continue Any Consideration of [Appellees'] Summary-Judgment Motion, and Response to [Appellees'] Motion to Exclude [Appellant's] Standard-of-Care and Causation Expert," wherein Appellant's attorney explained:

> [Appellant's] counsel was busy preparing for and trying three (3) separate medical-negligence cases from January to May of 2023 and unable to schedule expert depositions in this case. In addition, the [Appellant's] expert, Dr. Domenic Esposito, took a sabbatical and has been traveling, and has been unavailable. [Appellees'] attorney was contacted by [Appellant's attorney] in early June, 2023, about revising the scheduling order and was informed that [Appellees'] lawyer would be in trial himself during July of 2023 and unable to take the deposition until it was over.
> 6. These events reveal that counsel was diligent in attempting to set the expert's deposition but was unable to do so due to intervening circumstances.
> 7. The prejudice to [Appellant] if the trial is not continued and the deposition deadline is not extended is obvious and palpable. [Appellant] will be without an expert through whom she can present her prima facie case of HCLA liability. That is prejudice of the most fatal sort. [Appellees], on the other hand, are not prejudiced at all by continuing the trial date. To the contrary, they benefit from the ability to depose [Appellant's] expert without the trial looming over them.

Appellees filed a response in opposition to Appellant's motion. Therein, Appellees noted that Appellant failed to set its motion to revise the amended scheduling order for hearing. As such, Appellees argued that the date for depositions had passed, and they were prejudiced insofar as the case was set for trial in September 2023, and "Appellees have been deprived of the opportunity to conduct a discovery deposition of [Appellant's] expert witness in this matter." Specifically, Appellees asserted that Appellant's

- 3 -

failure to provide available discovery deposition dates for [Appellant's] expert witness deprived [Appellees] of potential additional discovery needed in this matter based on the deposition of [Appellant's] expert witness. [Appellant's] failure to present her expert witness for a discovery deposition in this matter has deprived [Appellees] of the opportunity to file a motion to amend or file dispositive motions based on the expert witness' testimony. [Appellees] have been prejudiced by [Appellant's] actions. Further, despite [Appellant's] Motion to Revise Amended Scheduling Order "to allow for the orderly completion of discovery and to amend the pleadings," no action on behalf of [Appellant] has been made to complete discovery in this matter or to amend any pleadings.

On August 18, 2023, the trial court conducted a hearing on all pending motions. On November 17, 2023, the trial court entered four separate orders: (1) "Order Denying [Appellant's] Motion to Continue Trial Date and to Continue Any Consideration of [Appellees'] Summary Judgment"; (2) "Order Denying [Appellant's] Motion to Revise Scheduling Order"; (3) "Order Granting [Appellees'] Motion to Exclude [Appellant's] Expert"; and (4) "Order Granting [Appellees'] Motion for Summary Judgment." Appellant filed a timely notice of appeal on December 14, 2023.

## II. Issues

Appellant raises the following issues as stated in her brief:

1. It was error to refuse to revise the scheduling order and continue the trial date and instead exclude Dr. Esposito.
2. Once the exclusion of Dr. Esposito is reversed, summary judgment must be reversed too.

## III. Standard of Review

This Court has explained the applicable standard of review for the imposition of discovery sanctions as follows:

> Rule 37 of the Tennessee Rules of Civil Procedure declares that the courts have the power to impose sanctions upon a party for failure to make or cooperate in discovery. A variety of sanctions are available to the court, including, in appropriate cases, dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party. Less severe sanctions include prohibiting parties from introducing designated evidence, refusing to allow a party to support or oppose designated claims or defenses, and striking

- 4 -

out pleadings or parts of pleadings.

> ***Griffith Servs. Drilling, LLC v. Arrow Gas & Oil, Inc.***, 448 S.W.3d 376, 379 (Tenn. Ct. App. 2014) (internal quotation marks omitted) (quoting ***Cincinnati Ins. Co. v. Mid-S. Drillers Supply, Inc.***, No. M2007-00024-COA-R3-CV, 2008 WL 220287 (Tenn. Ct. App. Jan. 25, 2008)). "A trial court has broad discretion when sanctioning a party for failing to comply with the discovery rules or orders of the court." ***Gordon v. Chapman***, No. W2019-01655-COA-R3-CV, 2020 WL 7861471, at *2 (Tenn. Ct. App. Dec. 22, 2020) (citations omitted). Therefore, "[a] trial judge's exclusion of expert witness testimony is subject to an abuse of discretion review by this Court." ***Buckner v. Hassell***, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (citing ***Lyle*** [***v. Exxon Corp.***], 746 S.W.2d [694,] at 699 [(Tenn. 1988)] (citing ***Brooks v. United Uniform Co.***, 682 S.W.2d 913 (Tenn. 1984))). "Discretion to impose sanctions does not, however, free trial courts from their responsibility to exercise reason and judgment." ***Langlois v. Energy Automation Sys., Inc.***, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009)[, *perm. app. denied* (Tenn. June 18, 2010)]. "[D]iscretionary decisions are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id*. (quotation marks and citations omitted). "A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning and which causes an injustice to the complaining party." ***Doe 1 ex rel. Doe 1 v. Roman Cath. Diocese of Nashville***, 154 S.W.3d 22, 42 (Tenn. 2005). "Correct review of a decision to impose sanctions [ ] involves comparison of a sanction's individual punitive impact and its general deterrent effect. Only when a sanction's punitive impact substantially outweighs its deterrent effect will we conclude that a trial court has abused its discretion, so long as the court has applied the correct legal framework." ***Langlois***, 332 S.W.3d at 358.

***Adams v. Illinois Central Railroad Company***, No. W2020-01290-COA-R3-CV, 2022 WL 170134 (Tenn. Ct. App. Jan. 19, 2022).

## IV. Analysis

Tennessee Rule of Civil Procedure 26.02(4)(A) governs expert witnesses, and states in relevant part:

> Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. In addition, upon request in an interrogatory, for each person so identified, the party shall disclose the witness's qualifications (including a list of all publications authored in the previous ten years), a list of all other cases in which, during the previous four years, the witness testified as an expert, and a statement of the compensation to be paid for the study and testimony in the case.

(ii) A party may also depose any other party's expert witness expected to testify at trial.

Furthermore, Tennessee Rule of Civil Procedure 26.05(A)(1) provides that:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony.

Concerning sanctions for a party's failure to comply with discovery orders, Tennessee Rule of Civil Procedure 16.06 provides:

If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37.02 . . . .

As referenced in Rule 16.06, Tennessee Rule of Civil Procedure 37.02 provides, in relevant part:

If a . . . party ... fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

- 6 -

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders . . . .

Tennessee Rule of Civil Procedure 37.03(1) further provides:

A party who without substantial justification fails to supplement or amend responses to discovery requests as required by Rule 26.05 is not permitted, unless such failure is harmless, to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court on motion may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses (including attorney fees) caused by the failure, these sanctions may include any of the actions authorized under Rule 37.02(A), (B), and (C) and may include informing the jury of the failure to supplement or amend.

Turning to the instant appeal, Tennessee Code Annotated section 29-26-115(a) sets out the elements that a plaintiff in a healthcare liability action must prove to prevail at trial, to-wit:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

The statute makes clear that "expert testimony must be provided by a plaintiff to establish the elements of his or her medical negligence case." *Shipley v. Williams*, 350 S.W.3d 527, 537 (Tenn. 2011) (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006); *Stovall v. Clarke*, 113 S.W.3d 715, 723 (Tenn. 2003); *Robinson v. LeCorps*, 83

S.W.3d 718, 724 (Tenn. 2002)); *see also* Tenn. Code Ann. § 29-26-115(b). As such, the trial court's exclusion of Dr. Esposito, Appellant's sole expert, amounted to dismissal of her lawsuit. In this regard, the instant case is similar to the ***Adams*** case cited above. Although the ***Adams*** case was brought under the Federal Employer's Liability Act, the discovery sanctions levied in ***Adams*** amounted to the dismissal of a party's claims, which is the case here. 2022 WL 170134, at *1. In ***Adams,*** the trial court entered a scheduling order, directing the plaintiff to designate expert witnesses by March 18, 2020. ***Id.*** The plaintiff did not disclose his expert witnesses until March 27, 2020. ***Id.*** In response, the defendant filed a motion to exclude the plaintiff's expert witnesses and a concurrent motion for summary judgment. ***Id.*** at *2-*3. Following a hearing on the motions, the trial court granted both the motion to exclude the plaintiff's experts and the motion for summary judgment. ***Id.*** On appeal, this Court vacated the trial court's discovery sanction of exclusion of plaintiff's expert. We explained that,

> [i]n determining the appropriate sanction when a party abuses or violates the discovery process, a trial court should consider the following four factors: (1) the party's explanation for not providing evidence during discovery; (2) the importance of the evidence; (3) the other party's need for time to prepare to meet the evidence; and (4) the possibility and propriety of granting a continuance. *See **Mercer v. Vanderbilt Univ., Inc.**,* 134 S.W.3d 121, 133 (Tenn. 2004) (citing ***Lyle v. Exxon Corp.***, 746 S.W.2d 694, 699 (Tenn. 1988)); ***Est. of Brock ex rel. Yadon v. Rist***, 63 S.W.3d 729, 732 (Tenn. Ct. App. 2001) (citing ***Lyle***, 746 S.W.2d at 699).

***Adams***, 2022 WL 170134, at *8.

Turning to the trial court's order excluding Dr. Esposito, the trial stated that it considered: (1) "the explanation given by [Appellant] for her failure to produce her expert witness for a deposition"; (2) "the importance of the evidence of [Appellant's] expert witness"; (3) "[Appellees'] need to prepare to meet the testimony of [Appellant's] expert witness"; and (4) "the possibility of another continuance in this matter." The trial court went on to grant Appellees' motion to exclude Dr. Esposito and held, in relevant part, that:

> 19. This Court has the inherent power to take appropriate corrective action against a party for discovery abuse, including exclusion of an expert witness.
> 20. This Court has the power to impose the most severe spectrum of sanctions not merely to penalize those whose conduct warrants sanctions but also to deter others who might be tempted to engage in similar conduct if the sanction did not exist.
> 21. The Court considered other available sanctions for [Appellant's] failure to comply with the Amended Scheduling Order, [Appellant's] failure to provide available deposition dates of [Appellant's] expert witness, and [Appellant's] failure to respond to serial requests for available deposition

dates.

22. The Court finds that no sanction other than exclusion of [Appellant's] expert witness is warranted and appropriate under the facts and circumstances of this matter.

23. The Court finds that any sanction other than exclusion of [Appellant's] expert would be highly prejudicial to [Appellees] and is not warranted or appropriate under the facts and circumstances of this matter.

24. Considering the facts of this matter and all of the evidence presented by the parties, [Appellees'] Motion to Exclude [Appellant's] Expert Witness is well-taken and shall be granted.

Concerning the imposition of discovery sanctions, the *Adams* Court explained:

"Discovery sanctions serve a three-fold purpose: (1) to secure a party's compliance with the discovery rules, (2) to deter other litigants from violating the discovery rules, and (3) to punish parties who violate discovery rules." *Magness v. Couser*, No. M2006-00872-COA-R3-CV, 2008 WL 204116, at *6 (Tenn. Ct. App. Jan. 24, 2008) (citation and internal quotation marks omitted). This Court has explained

> that the powers of the court are not unlimited, and [] the inherent powers of the court [including to take action to prevent discovery abuse] must be exercised with both restraint and discretion. . . . [T]he punishment must fit the offense [, and] the power to sanction should be used sparingly. It should not be used like a sword and used frequently . . . [because] to do so would diminish the significance when sanctions are imposed.

*Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 15 (Tenn. Ct. App. 2004) (internal quotation marks omitted).

*Adams*, 2022 WL 170134, at *7-*8. As to the harsh sanction of exclusion of a necessary expert witness, the *Adams* Court cautioned:

> One possible sanction is exclusion of expert witness testimony. "The rules of discovery exist, in part, to prevent 'trial by ambush.' Expert testimony should only be excluded when there would be 'unfair surprise or trial by ambush.'" *Stanfield v. Neblett*, 339 S.W.3d 22, 31-32 (Tenn. Ct. App. 2010) (internal citation omitted) (quoting *Watkins v. Affiliated Internists, P.C.*, No. M2008-01205-COA-R3-CV, 2009 WL 5173716 (Tenn. Ct. App. Dec. 29, 2009); *Austin v. City of Memphis*, 684 S.W.2d 624, 632 (Tenn. Ct. App. 1984)). "When matters have reached a point in a case where the trial judge considers the sanction of preclusion [of expert witness

testimony], . . . it will usually be because the court has been unable to otherwise secure a party's compliance with the discovery rules." ***Walls v. Conner***, No. E2007-01917-COA-R3-CV, 2008 WL 4735311, at \*7 (Tenn. Ct. App. Oct. 27,2008).

To this end, Tennessee courts have held that exclusion of experts may be appropriate for failure "to name an expert witness" when the failure is knowing and deliberate. ***Lyle***, 746 S.W.2d at 699 (discussing a party's failure to name an expert witness until four days before trial). This heightened standard is in line with the decisions of other courts, which have held that exclusion of a necessary expert should be judged in a similar manner to the harsh sanctions of dismissal or default. *See, e.g.*, ***Croydon Plastics Co. v. Lower Bucks Cooling & Heatin****g*, 698 A.2d 625, 629 (Pa. Super. Ct. 1997) ("This Court recently held that such heightened review is appropriate when scrutinizing an order which is tantamount to dismissal in that it leads to summary judgment being granted against the sanctioned party."); ***Montana State Univ.-Bozeman v. Montana First Jud. Dist. Ct.***, 2018 MT 220, ¶ 21, 392 Mont. 458, 469, 426 P.3d 541, 550 (holding that extreme sanctions necessitating a higher standard of bad conduct include those that "preclude[e] or truncat[e] litigation on the merits," such as "claim dismissal, default judgment, striking of asserted defenses, or exclusion of evidence"); *see also* ***Branche v. Zimmer, Inc.***, No. 3:06-CV-234, 2008 WL 5504700, at \*3 (E.D. Tenn. Aug. 11, 2008) ("Although the sanction imposed by the district court for plaintiffs' alleged discovery violations was the preclusion of plaintiffs' expert witness testimony at trial, this sanction, in effect, resulted in the dismissal of plaintiffs' medical malpractice case, because without expert testimony, plaintiffs had no claim to present. Therefore, we will review the district court's actions pursuant to Fed. R. Civ. P. 37 as a sanction for discovery violations that resulted in dismissal of plaintiffs' case with prejudice.").

In Tennessee, only a very strong showing of bad conduct by the non-moving party can justify the "harsh sanction" of dismissal. ***Holt v. Webster***, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). "The power to dismiss a party's claims is best exercised infrequently and only when the punishment fits the offense." ***Langlois***, 332 S.W.3d at 357 (citing ***Pegues v. Illinois Cent. R. Co.***, 288 S.W.3d 350, 354 (Tenn. Ct. App. 2008)). Dismissing a case for "failure to abide by discovery rules is a severe sanction that 'run[s] counter to the judicial system's general objective of disposing of cases on the merits.'" ***Williams v. Baptist Mem'l Hosp.***, 193 S.W.3d 545, 550-51, 552 (Tenn. 2006) (citations omitted). "Dismissal . . . is generally not favored in circumstances where lesser sanctions are available and where the neglect is more attributable to the attorney than the client." ***Moody v. Hutchison***, 247

S.W.3d 187, 198 (Tenn. Ct. App. 2007) (citation omitted).

Instead, the harshest sanctions should be reserved for cases where, for example, there was no excusable neglect, a party offered perjured discovery responses, or there was more than a year-long delay in responding to discovery. *See Am. Exp. Centurion v. Lowrey*, No. E2011-01247-COA-R3-CV, 2013 WL 937831, at *5 (Tenn. Ct. App. March 11, 2013) (citing cases involving default judgment). In other words, we will not impose this harsh sanction unless "there has been a 'clear record of delay or contumacious conduct.'" *Langlois*, 332 S.W.3d at 357 (quoting *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998)); *see also SpecialtyCare IOM Servs., LLC v. Medsurant Holdings, LLC*, No. M2017-00309-COA-R3-CV, 2018 WL 3323889, at *18 (Tenn. Ct. App. July 6, 2018) (citations, quotation marks, and alterations omitted) (citing *Lowrey*, 2013 WL 937831, at *5) (defining contumacious as "willfully stubborn and disobedient conduct" and noting that "in order to justify the harsh result of dismissal, the party's actions in failing to timely respond to discovery must both tend to cause a delay and be scornful or willfully stubborn")

*Adams*, 2022 WL 170134, at *8-*9 (footnote omitted).

We first note that Appellees did not file a motion to compel discovery before moving for the exclusion of Appellant's expert. The same was true in *Adams*, where this Court stated:

It [] bears mentioning that Appellee did not seek the trial court's assistance in securing Appellant's compliance with the scheduling order through the filing of a motion to compel. *See* 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice §18:13, at 886, 887 (2021–2022 ed.) (stating that when a party fails to comply with discovery rules, "a motion to compel discovery . . . . is the usual remedy and the predicate for the [ ] type of relief [provided for in Rule 37.02].") Instead, Appellee proceeded directly to the "nuclear option" of asking that Appellant's experts be excluded and summary judgment granted in its favor. *See Geraci v. Andrews*, No. 16 C 721, 2017 WL 1822290, at *1 (N.D. Ill. May 5, 2017) ("The parties in this case have filed cross-motions to compel discovery, with both sides resorting to the nuclear option of asking for a default judgment/dismissal of the case as a sanction for their opponent's claimed recalcitrance.").

*Adams*, 2022 WL 170134, at *10. The motion to exclude in *Adams* "was filed little more than two months after Appellant missed his first relevant deadline contained in the scheduling order and two days before the deadline to make experts available for depositions." *Id.* In its order excluding Dr. Esposito, the trial court stated that, "This matter

- 11 -

was filed on August 16, 2016, has been pending for over seven (7) years, and is the oldest case on the Court's docket." While this statement may be true, as discussed above, significant delay was caused by the stay pending the Tennessee Supreme Court's decision in **Willeford**. The discovery timeline is more truncated.

Appellant disclosed Dr. Esposito on February 13, 2023, which was within the timeline set for disclosure of experts. All depositions were to be completed by June 12, 2023. Unable to procure Dr. Esposito's availability, Appellant moved to revise the scheduling order. Before the trial court considered that motion, on July 7, 2023 (less than one month after the deposition deadline), Appellees move to disqualify Dr. Esposito and for summary judgment. On July 24, 2023, Appellant filed a motion to continue the trial. On August 18, 2023 (just over two months after the deposition deadline, *i.e.,* June 12, 2023), the trial court held a combined hearing on Appellant's motions to revise the scheduling order and to continue the trial, and on Appellees' motions to exclude Dr. Esposito and for summary judgment. So, in the first instance, the timeline of discovery delay was closer to two months but was certainly not seven years as noted by the trial court. However, regardless of the timeline, Appellees did not pursue a motion to compel discovery as would be the normal course of action.

Furthermore, although it is clear to this Court that, by filing the motion to revise the scheduling order, Appellant was attempting to ameliorate the problems with scheduling Dr. Esposito's deposition, in its order excluding Dr. Esposito, the trial court concluded that the motion to revise was insufficient, *i.e.,* "Despite filing a Motion to Revise Amended Scheduling Order 'to allow for the orderly completion of discovery and to amend the pleadings,' [Appellant] took no action to complete discovery in this matter or to amend any pleadings." This is a bit of a misstatement given the fact that Appellant's motion to revise the scheduling order ostensibly was an action "to complete discovery." As was the case in **Adams**, "Appellant did specifically request that the scheduling order be modified." 2022 WL 170134, at *12. Again, the trial court did not address the motion to revise the scheduling order before Appellees filed their motions to exclude Dr. Esposito and for summary judgment. Still, when faced with these motions, Appellant took further action by filing a motion to continue the trial.

Concerning the propriety of a continuance, **Mercer**, 134 S.W.3d at 133, the trial court stated that it "considered the possibility of another continuance in this matter" but ultimately concluded that Appellant "failed to demonstrate excusable neglect to prevent exclusion of [Dr. Esposito]." This conclusion is based, in part, on the trial court's finding that "[r]equiring [Appellees] to go to trial as scheduled beginning September 19, 2023, without being permitted the opportunity to take a discovery deposition of [Appellant's] expert witness and prepare to defend against [Appellant's] wrongful death action, would be highly prejudicial to [Appellees]." The trial court was correct to consider Appellees' need for time to prepare, *see* **Mercer**, 134 S.W.3d at 133, and taking Dr. Esposito's deposition certainly was essential to that preparation. However, the importance of Dr.

- 12 -

Esposito to Appellant's case was paramount. *See Mercer*,134 S.W.3d at 133. As discussed above, expert proof is absolutely necessary to the prosecution of Appellant's healthcare liability/wrongful death case. Because of the necessity of the expert proof, exclusion of Appellant's expert, in effect, is dismissal of the action. *Adams*, 2022 WL 170134, at *8 (noting that when the discovery sanction of exclusion of the plaintiff's expert witnesses is tantamount to dismissal of plaintiff's lawsuit, a heightened review is appropriate). In its order excluding Dr. Esposito, the trial court acknowledged "that the deposition of [Appellant's] expert witness is a vital part of the case," but the trial court clearly placed more emphasis on the fact that Dr. Esposito's deposition was "vital to [Appellees'] defense in a medical malpractice action." While we agree that delay in scheduling Dr. Esposito's testimony precluded the start of trial on September 19, 2023, the trial court vaguely held that further delay "would be highly prejudicial to [Appellees]." The trial court made no specific findings as to how such delay would actually prejudice Appellees or how much time they would need to prepare for trial. The same was true in *Adams* where

> the trial court did not make any specific findings as to whether a continuance would be appropriate or how long it would take the parties to prepare for trial. *Mercer*, 134 S.W.3d 121, 132 (Tenn. 2004) (upholding the exclusion of some, but not all, of the defendant's experts, where the trial court found that the opposing party would need an additional three to six weeks to prepare to meet the evidence); *see also Mercer v. Vanderbilt Univ., Inc.*, No. M2000-00801-COA-R3-CV, 2002 WL 31728864, at *3 (Tenn. Ct. App. Dec. 5, 2002), *aff'd in part, rev'd in part*, 134 S.W.3d 121 (Tenn. 2004) (footnote omitted) (noting that "[a] veritable host of medical experts in various disciplines testified concerning the issues of causation and negligence" for both parties, and thus the exclusion of other evidence was not tantamount to dismissal).

*Adams*, 2022 WL 170134, at *12. Here, Appellant disclosed her expert and, from our review, was working to schedule his deposition. Perhaps Appellant's counsel could have been more communicative with Appellees' attorneys concerning the difficulties with Dr. Esposito, but Appellant did appeal to the trial court to revise the scheduling order and to continue the trial date. Again, both of these motions were made less than two months after the June 12, 2023 deadline for depositions.

Furthermore, the trial court made no finding that Appellant's conduct was contumacious, intentional, blatant, or otherwise so egregious as to justify the harshest sanction available, *i.e.,* exclusion of Appellant's expert and dismissal of her lawsuit. As discussed above, courts should not impose this harsh sanction unless "there has been a 'clear record of delay or contumacious conduct.'" *Langlois*, 332 S.W.3d at 357 (quoting *Shahrdar,* 983 S.W.2d at 236) (Tenn. Ct. App. 1998)). This Court has explained that

"[c]ontumacious is defined as 'scornful' or 'recalcitrant.'" ***Am. Exp. Centurion*** [***Bank v. Lowrey***], No. E2011-01247-COA-R3-CV, 2013 WL 937831, at \*5 (Tenn. Ct. App. March 11, 2013) (quoting Bryan Garner, <u>A Dictionary of Modern Legal Usage</u> 220 (2nd ed. 1995) (characterizing the conduct as "egregiously scornful of the judicial process.")). Contumacious conduct means "'[w]illfully stubborn and disobedient conduct, commonly punishable as contempt of court.'" ***Id.*** (quoting Black's Law Dictionary 298 (5th ed. 1979)). Accordingly, "in order to justify the harsh result of dismissal, the party's actions in failing to timely respond to discovery must both tend to cause a delay and be 'scornful' or 'willfully stubborn.'" ***Id***.

***SpecialtyCare IOM Servs.***, 2018 WL 3323889, at \*18 (citations omitted). Perhaps the lack of a finding of contumacious conduct is because there was none. The record suggests that Appellant's failure to schedule Dr. Esposito's deposition was due to legitimate scheduling issues and, in any case, was not sufficiently willful to rise to the level of contumacy.

Although exclusion of evidence may be a proper sanction if imposed under certain circumstances, Tenn. R. Civ. P. 37.03(1), it is not the only available sanction. Tenn. R. Civ. P. 37.03(1) ("In addition to or in lieu of this sanction, the court on motion may impose other appropriate sanctions."); *see also* Tenn. R. Civ. P. 37.03, advisory commission comment (noting that the penalties contained therein are likely "guidelines" for the exercise of the inherent power of the court). Therefore, the trial court must consider whether the sanction is proportional to the failures at issue and whether "other sanctions may be appropriate" under the circumstances. ***Lyle***, 746 S.W.2d at 699; *see also* ***Pettus v. Hurst***, 882 S.W.2d 783, 787 (Tenn. Ct. App. 1993) (citing ***Lyle***, 746 S.W.2d at 699) (holding that a discovery sanction should be "commensurate with the parties' conduct"). Here, the trial court's order states that it considered other possible sanctions but does not specify what the "other possible sanctions" were. Nonetheless, the trial court concluded that "no sanction other than exclusion of [Appellant's] expert witness is warranted and appropriate under the facts and circumstances of this matter," and "any sanction other than exclusion of [Appellant's] expert would be highly prejudicial to [Appellees]." We disagree. Based on the facts presented here, including: (1) the discovery timeline, *i.e.*, Dr. Esposito was excluded just over two months after expiration of the deposition deadline; (2) Appellant's attempts to cure its issues with Dr. Esposito by filing motions to revise the scheduling order and to continue the trial; (3) the lack of contumacious conduct on the part of Appellant or her attorney; (4) the fact that failure to comply with the discovery orders was not the fault of the Appellant, ***Moody v. Hutchison***, 247 S.W.3d 187, at 198 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. March 3, 2008) (holding that when lesser sanctions are available and the neglect is not attributable to the party, dismissal generally is not warranted); (5) the dire consequences of dismissal of Appellant's lawsuit following exclusion of Dr. Esposito; and (6) the relatively small inconvenience that a continuance would have caused Appellees in preparing for trial, we conclude that the trial court's sanction was too harsh. On remand, the trial court is not precluded from reconsidering Appellant's motion to revise the

scheduling order and to continue the trial.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's November 17, 2023 orders, including the: (1) "Order Denying [Appellant's] Motion to Continue Trial Date and to Continue Any Consideration of [Appellees'] Summary Judgment"; (2) "Order Denying [Appellant's] Motion to Revise Scheduling Order"; (3) "Order Granting [Appellees'] Motion to Exclude [Appellant's] Expert"; and (4) "Order Granting [Appellees'] Motion for Summary Judgment." The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with the opinion. Costs of the appeal are assessed one-half to the Appellant, Shirley Buckley, and one-half to the Appellees, West Tennessee Medical Group, Inc., Jackson Radiology Associates, P.A., Timothy Ray Crossett, M.D., Thomas Channing Head, M.D., and John W. Neblett, Jr., M.D. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE